Filed 10/31/11

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S184212 |
| v. | ) | |
| | ) | Ct.App. 4/1 D054343 |
| XUE VANG, | ) | |
| | ) | San Diego County |
| Defendant and Appellant. | ) | Super. Ct. No. SCD 213306 |
| _____ | ) | |

An expert witness testified about whether a crime was gang related. The Court of Appeal held that the trial court erred in permitting the expert to respond to hypothetical questions the prosecutor asked because the questions closely tracked the evidence in a manner that was only thinly disguised. We disagree that the trial court erred. It is required, not prohibited, that hypothetical questions be based on the evidence. The questioner is not required to disguise the fact the questions are based on that evidence.

## I. FACTS AND PROCEDURAL HISTORY

These facts are taken largely from the Court of Appeal opinion.

Defendants Xue Vang, Sunny Sitthideth, Danny Lê, and Dang Ha were convicted of assault by means of force likely to produce great bodily injury for assaulting 20-year-old William Phanakhon. (Pen. Code, § 245, subd. (a)(1).) The jury also found true an enhancement allegation that the defendants committed the assault "for the benefit of, at the direction of, or in association with any criminal

1

street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." (Pen. Code, § 186.22, subd. (b)(1); see generally *People v. Albillar* (2010) 51 Cal.4th 47, 59-68.) The prosecution's theory was that the assault was committed for the benefit of the Tiny Oriental Crips (TOC), a criminal street gang.

Phanakhon testified that he had associated for a while with members of the TOC, but denied being a gang member. He met the four defendants in the fall and winter of 2007. At trial, Sitthideth, Ha, and Lê, but not Vang, stipulated they were TOC members.

During the evening of April 28, 2008, Phanakhon received a telephone call at his home. The caller, whose voice seemed familiar, asked to "come over." Phanakhon agreed. He went to his garage and Vang arrived a short time later. Phanakhon also saw Lê peek inside the garage. About five minutes after that, Vang asked Phanakhon if he wanted to go "hang out." Phanakhon followed Vang down the street. He also saw Ha and Sitthideth walking towards the corner. When Phanakhon rounded the corner, someone struck him in the back of the head from behind. He fell down and tried to protect his head from continued blows. He then lost consciousness.

San Diego Police Detective Dave Collins, who was conducting surveillance nearby, observed the assault. He watched as four males approached the corner. Suddenly, three of the men began beating the fourth, but the victim did not fight back. The victim fell to the ground, but two of the assailants pulled him up and hit him again. Detective Collins observed two of the men back away while the third pulled out a stick or pipe and hit the victim on the head with it. The victim fell to the ground a second time. Detective Collins broadcast what he was seeing. Officer Michael Dewitt responded and arrived in time to see four men beating the victim.

2

The assailants fled.  The four defendants were arrested nearby.  The pipe or stick that Detective Collins observed was never found.  Paramedics transported Phanakhon to the hospital, where he was examined for head injuries, then released.  Phanakhon testified he did not know "for sure" why he was attacked, but he stated two possible reasons.  First, the defendants might have attacked him for disassociating himself from TOC.  Second, he might have been "checked" because he had heard something he was not supposed to hear.

To show that the assault was gang related, the prosecution called an expert to testify about criminal street gangs.  The Court of Appeal opinion summarized his testimony:  "The prosecution called Detective Daniel Hatfield as its expert witness on criminal street gangs.  Detective Hatfield testified about the culture and habits of gangs, including member-on-member discipline for no longer hanging out with the gang or not 'putting in work.'  Turning to TOC, he described it as a predominately Laotian group that split off from a larger gang set in the early 1990's and claimed Linda Vista as its territory.  Detective Hatfield identified three separate predicate offenses committed by its members and opined that TOC was a criminal street gang.  Given the stipulation, there was no dispute that Ha, Sitthideth and Lê were members of TOC.  Detective Hatfield believed that Vang and the victim Phanakhon were also gang members."

In part, Detective Hatfield responded to hypothetical questions.  As the Court of Appeal described it, "Over defense objection, Detective Hatfield responded to two hypothetical questions from the prosecution that tracked the facts of the case."[1]  On direct examination, the prosecutor asked about a

---

[1]    It would be more accurate to say that the questions tracked the *evidence*, not the *facts* of the case.  The jury determines what the facts are, and it may or may not believe all of the evidence.

3

hypothetical assault on a "young baby gangster." After stating the hypothetical facts, the prosecutor asked: "Based on the facts of that hypothetical, do you have an opinion as to whether this particular crime was committed for the benefit of and [in] association with or at the direction of the Tiny Oriental Crips street gang?" Detective Hatfield said he did have an opinion based on those facts. He believed that "they did this to keep the gang strong because the gang set is only as strong as its weakest member. And that member did something to the TOC gang for him to be victimized in this case. They put him in check. They brought him back in line over some perceived wrong that this individual did to that set, and the victim may not even know what he or she did in this incident." He stated that the assault would benefit TOC and was committed in association with TOC and at the direction of TOC members.

On redirect examination, the prosecutor stated additional hypothetical facts based on the evidence, and asked whether, under those hypothetical facts, Detective Hatfield had "an opinion about whether or not this was a gang-motivated attack." The witness said he did. The prosecutor then asked, "What is your opinion about the gang motivation behind the attack that has been described in the hypothetical?" Detective Hatfield responded, "The reason why I feel that it was gang motivated is what you told me exactly as far as the fact that this individual, in this hypothetical, is saying that he had been hanging. He had been associating with the documented gang members. He tells me that. That tells me that . . . he has been a gang member, and especially in that hypothetically if he meets that criteria, that fact that — he doesn't have to know the reason why he is being attacked — doesn't have to know. There could be a perception or a paranoia from the gang members that are attacking him that he did something to tick off the gang set. The fact that he was lured out to where he was attacked tells me that that was planned. The fact that it was done in concert with known

4

documented gang members, that they work together to do what they did to the victim, tells me that this is a gang-motivated incident. It wasn't about friends fighting among one another."

The court sentenced Vang, Sitthideth, and Lê to state prison for six, four, and 12 years, respectively, and placed Ha on probation. They appealed. The Court of Appeal found that the trial court erred in permitting Detective Hatfield to respond to the hypothetical questions but found the error harmless. It also rejected other arguments defendants made. It modified one condition of probation as to Ha and otherwise affirmed the judgments.

All four defendants petitioned for review. We granted review and limited the issues to (1) whether the Court of Appeal correctly found that the trial court erred in permitting the use of the hypothetical questions, and (2) if so, whether the Court of Appeal correctly found the error harmless. On our own motion, we severed Vang's case from that of the other defendants and deferred further briefing by the other defendants pending our decision in this case.

## II. DISCUSSION

"California law permits a person with 'special knowledge, skill, experience, training, or education' in a particular field to qualify as an expert witness (Evid. Code, § 720) and to give testimony in the form of an opinion (*id*., § 801). Under Evidence Code section 801, expert opinion testimony is admissible only if the subject matter of the testimony is 'sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.' (*Id*., subd. (a).) The subject matter of the culture and habits of criminal street gangs . . . meets this criterion." (*People v. Gardeley* (1996) 14 Cal.4th 605, 617 (*Gardeley*).)

The issue before us concerns the propriety of permitting the gang expert to respond to the hypothetical questions the prosecution asked regarding whether defendants' assault on Phanakhon was gang related. Defendant argues the trial

5

court erred "when it permitted the prosecutor to ask a detailed hypothetical question, closely tracking the facts in this case, about whether the assault was gang-motivated." The Court of Appeal summarized the issue: "Defendants argue that the trial court abused its discretion when it allowed Detective Hatfield to testify in response to a hypothetical question that the assault on Phanakhon, thinly disguised in the hypothetical as 'young baby gangster,' was for the benefit of TOC and was gang motivated."

Relying on *People v. Killebrew* (2002) 103 Cal.App.4th 644 (*Killebrew*), the Court of Appeal found that the trial court erred. It "agree[d] with the rule of *Killebrew* that an expert witness may not offer an opinion on what a particular defendant is thinking. (*Killebrew*, *supra*, 103 Cal.App.4th at p. 647.) And more importantly here, the prosecutor may not circumvent that rule by asking the expert a hypothetical question that thinly disguises the defendant's identity." It also said that "the trial court abused its discretion by admitting Detective Hatfield's testimony regarding defendants' knowledge and intent based on its apparent belief that such testimony was admissible so long as it was presented in the form of a hypothetical. . . . [T]he prosecution may not use a hypothetical question to conceal an expert's improper testimony on the real defendants' subjective knowledge and intent."

The Court of Appeal interpreted *Killebrew, supra*, 103 Cal.App.4th 644, as prohibiting hypothetical questions if they too closely track the evidence, then concluded that "Detective Hatfield's testimony in response to the two hypothetical questions violated the rule in *Killebrew*. The only apparent differences between the trial testimony and the hypothetical were the names of the parties. In the hypothetical question, the prosecution called the victim 'young baby gangster' instead of Phanakhon and called the four defendants 'three baby gangsters and one O.G.,' that is, 'original gangster.' Indeed, one of the defense attorneys reported

6

hearing 'laughter or tittering from the jury' when Ha's defense attorney objected to the use of the hypothetical at an earlier stage in Detective Hatfield's testimony."

The Court of Appeal erred in condemning the hypothetical questions because they tracked the evidence in a manner that was only "thinly disguised." "Generally, an expert may render opinion testimony on the basis of facts given 'in a hypothetical question that asks the expert to assume their truth.' (1 McCormick on Evidence (4th ed. 1992) § 14, p. 58.)" (*Gardeley*, *supra*, 14 Cal.4th at p. 618.) The hypothetical question we approved in *Gardeley* was similar to the ones here. "After giving Detective Boyd a 'hypothetical' *based on the facts of the assault in this case* . . . by three Family Crips members, the prosecutor asked Boyd if in his expert opinion an attack as described would be 'gang-related activity.' Boyd responded that it was a 'classic' example of gang-related activity . . . ." (*Id.* at p. 619, italics added.) We held that this testimony helped support the jury's finding that the crime of that case was gang related. (*Id.* at pp. 619-620.) The hypothetical questions in this case were just as proper as the one described in *Gardeley*. (See also *People v. Ward* (2005) 36 Cal.4th 186, 209 [upholding "fact-specific hypothetical questions to elicit testimony from [gang] experts that a gang member going into rival gang territory — like defendant — would do so as a challenge and would protect himself with a weapon"]; *People v. Garcia* (2007) 153 Cal.App.4th 1499, 1505, 1513-1514 [prosecutor properly stated hypothetical facts, then asked the expert, " 'do you have an opinion as to whether this particular offense was committed for the benefit of, or in association with the criminal street gang?' "].)

Use of hypothetical questions is subject to an important requirement. "Such a hypothetical question must be rooted in facts shown by the evidence . . . ." (*Gardeley*, *supra*, 14 Cal.4th at p. 618; see also *People v. Moore* (2011) 51 Cal.4th 386, 405; *People v. Richardson* (2008) 43 Cal.4th 959, 1008; *People v. Ward*,

7

*supra*, 36 Cal.4th at p. 209; *People v. Boyette* (2002) 29 Cal.4th 381, 449; *People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1551, fn. 4; 1 Jefferson, Cal. Evidence Benchbook (Cont. Ed. Bar 4th ed. 2010 update) § 30.48, p. 687.)  A hypothetical question need not encompass all of the evidence.  "It is true that 'it is not necessary that the question include a statement of all the evidence in the case.  The statement may assume facts within the limits of the evidence, not unfairly assembled, upon which the opinion of the expert is required, and considerable latitude must be allowed in the choice of facts as to the basis upon which to frame a hypothetical question.'  (*People v. Wilson* (1944) 25 Cal.2d 341, 349.)  On the other hand, the expert's opinion may not be based 'on assumptions of fact without evidentiary support [citation], or on speculative or conjectural factors . . . .' "  (*People v. Richardson*, *supra*, at p. 1008; see also 3 Witkin, Cal. Evidence (4th ed. 2000) Presentation at Trial, § 194, p. 258 ["The traditional method of taking the opinion evidence of an expert is the hypothetical question.  This may be framed on any theory that can be deduced from the evidence, and the questioner may assume any facts within the limits of the evidence and omit any facts not deemed material."].)  But, however much latitude a party has to frame hypothetical questions, the questions must be rooted in the evidence of the case being tried, not some other case.

The reason for this rule should be apparent.  A hypothetical question not based on the evidence is irrelevant and of no help to the jury.  " 'Exclusion of expert opinions that rest on guess, surmise or conjecture [citation] is an inherent corollary to the foundational predicate for admission of the expert testimony:  will the testimony assist the trier of fact to evaluate the issues it must decide?' "  (*People v. Richardson*, *supra*, 43 Cal.4th at p. 1008.)  Expert testimony *not* based on the evidence will not assist the trier of fact.  Thus, "[a]lthough the field of permissible hypothetical questions is broad, a party cannot use this method of

8

questioning a witness to place before the jury facts divorced from the actual evidence and for which no evidence is ever introduced." (*People v. Boyette*, *supra*, 29 Cal.4th at p. 449.)

As applied here, this rule means that the prosecutor's hypothetical questions had to be based on what the evidence showed *these* defendants did, not what someone else might have done. The questions were directed to helping the jury determine whether *these* defendants, not someone else, committed a crime for a gang purpose. Disguising this fact would only have confused the jury.

The parties agree that the hypothetical questions of this case were based on the evidence. But the Court of Appeal found these questions were too closely based on the evidence in a manner that was only "thinly disguised." This conclusion transforms the *requirement* that a hypothetical question be rooted in the evidence into a *prohibition* — or at least into the confounding rule that the party posing the question must disguise from the jury the fact it is rooted in the evidence — and not "thinly," it appears, but thickly.

In support of this argument, defendant Vang and the Court of Appeal rely primarily on *Killebrew*, *supra*, 103 Cal.App.4th 644. We discussed *Killebrew* in *People v. Gonzalez* (2006) 38 Cal.4th 932 (*Gonzalez*). In *Gonzalez*, the defendant argued that testimony by the gang expert (Sergeant Garcia) violated *Killebrew* by expressing an opinion, in response to hypothetical questions, regarding whether some of the witnesses had been intimidated by gang members. We rejected the argument. "Sergeant Garcia merely answered hypothetical questions based on other evidence the prosecution presented, which is a proper way of presenting expert testimony." (*Gonzalez*, *supra*, at p. 946, citing *Gardeley*, *supra*, 14 Cal.4th at p. 618.) We explained that the "witness did not express an opinion about whether the particular witnesses in this case had been intimidated. [Citation.] [¶] It is true that Sergeant Garcia's opinion, if found credible, might, together with

9

other evidence, lead the jury to find the witnesses were being intimidated . . . . But this circumstance makes the testimony probative, not inadmissible." (*Gonzalez*, *supra*, at p. 947.)[2]

We explained *Killebrew*'s limited significance. "*People v. Killebrew*, *supra*, 103 Cal.App.4th 644, is somewhat unclear in this regard. Although its legal discussion states that the expert 'informed the jury of his belief of the suspects' knowledge and intent on the night in question,' its factual account states that '[t]hrough the use of hypothetical questions, Darbee [the expert] testified that each of the individuals in the three cars' had certain knowledge and intent. (*Id*. at p. 658.) The opinion never specifically states whether or how the expert referred to specific persons, rather than hypothetical persons. Obviously, there is a difference between testifying about specific persons and about hypothetical persons. *It would be incorrect to read* Killebrew *as barring the questioning of expert witnesses through the use of hypothetical questions regarding hypothetical persons.* As explained in *People v. Gonzalez, supra*, 126 Cal.App.4th at page 1551, footnote 4, *use of hypothetical questions is proper*." (*Gonzalez, supra*, 38 Cal.4th at p. 946, fn. 3, italics added.)[3]

---

[2]    Throughout our discussion, we cited with approval *People v. Gonzalez*, *supra*, 126 Cal.App.4th 1539 (a different *Gonzalez*), which stated the relevant law and discussed *Killebrew* correctly.

[3]    The Court of Appeal described this discussion as "dicta," a word commonly used as shorthand for the term "obiter dictum." We do not believe the discussion was obiter dictum. Black's Law Dictionary defines "obiter dictum" as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive). — Often shortened to *dictum* or, less commonly, *obiter*." (Black's Law Dict. (9th ed. 2009) p. 1177, col. 2.) ("Dicta" is, of course, the plural form of "dictum." (*Ibid*.))

The defendant in *Gonzalez, supra*, 38 Cal.4th 932, relied on *Killebrew*, *supra*, 103 Cal.App.4th 644, to argue the trial court had erred in permitting

*(footnote continued on next page)*

To the extent that *Killebrew*, *supra*, 103 Cal.App.4th 644, was correct in prohibiting expert testimony regarding whether the *specific* defendants acted for a gang reason,**4** the reason for this rule is *not* that such testimony might embrace the ultimate issue in the case. "Testimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact." (Evid. Code, § 805; see *People v. Prince*, *supra*, 40 Cal.4th at p. 1227; *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1370-1371.) Rather, the reason for the rule is similar to the reason expert testimony regarding the defendant's guilt in general is improper. "A witness may not express an opinion on a defendant's guilt. [Citations.] The reason for this rule is not because guilt is the ultimate issue of fact for the jury, as opinion testimony often goes to the ultimate issue. [Citations.] 'Rather, opinions on guilt or innocence are inadmissible because they are of no assistance to the trier of fact. To put it another

---

*(footnote continued from previous page)*

hypothetical questions. We rejected the argument, partly on the basis that it is incorrect to read *Killebrew* as prohibiting the "questioning of expert witnesses through the use of hypothetical questions." (*Gonzalez*, *supra*, at p. 946, fn. 3.) The comment in *Gonzalez* in question thus directly responded to the defendant's argument and was necessary to fully explain why that argument lacked merit.

In any event, we repeat what we said in *Gonzalez*: We disapprove of any interpretation of *Killebrew*, *supra*, 103 Cal.App.4th 644, as barring, or even limiting, the use of hypothetical questions. Even if expert testimony regarding the defendants themselves is improper, the use of hypothetical questions is proper.

**4** It appears that in some circumstances, expert testimony regarding the specific defendants might be proper. (See *People v. Valdez* (1997) 58 Cal.App.4th 494, 507, cited with approval in *People v. Prince* (2007) 40 Cal.4th 1179, 1227.) The question is not before us. Because the expert here did not testify directly about defendants, but only responded to hypothetical questions, we will assume for present purposes the expert could not properly have testified about defendants themselves.

11

way, the trier of fact is as competent as the witness to weigh the evidence and draw a conclusion on the issue of guilt.' " (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 77; see also *People v. Prince*, *supra*, at p. 1227.)

Here, for example, Detective Hatfield had no personal knowledge whether any of the defendants assaulted Phanakhon and, if so, how or why; he was not at the scene. The jury was as competent as the expert to weigh the evidence and determine what the facts were, including whether defendants committed the assault. So he could not testify directly whether they committed the assault for gang purposes. But he properly could, and did, express an opinion, based on hypothetical questions that tracked the evidence, whether the assault, if the jury found it in fact occurred, would have been for a gang purpose. "Expert opinion that particular criminal conduct benefited a gang" is not only permissible but can be sufficient to support the Penal Code section 186.22, subdivision (b)(1), gang enhancement. (*People v. Albillar*, *supra*, 51 Cal.4th at p. 63.) It is true that Detective Hatfield's opinion, if found credible, might, together with the rest of the evidence, cause the jury to find the assault was gang related. "But this circumstance makes the testimony probative, not inadmissible." (*Gonzalez*, *supra*, 38 Cal.4th at p. 947.) It is also true that, because defendants assaulted their victim under the watchful eye of a police officer conducting surveillance, the jury would likely credit the evidence that they did commit the assault. But that is merely unfortunate for defendants, not a reason to exclude probative and permissible expert testimony.

To the extent *Killebrew*, *supra*, 103 Cal.App.4th 644, purported to condemn the use of hypothetical questions, it overlooked the critical difference between an expert's expressing an opinion in response to a hypothetical question and the expert's expressing an opinion about the defendants themselves. *Killebrew* stated that the expert in that case "simply informed the jury of his belief

12

of the suspects' knowledge and intent on the night in question, issues properly reserved to the trier of fact." (*Killebrew*, *supra*, 103 Cal.App.4th at p. 658.) But, to the extent the testimony responds to hypothetical questions, as in this case (and, it appears, in *Killebrew* itself), such testimony does no such thing. Here, the expert gave the opinion that an assault committed in the manner described in the hypothetical question would be gang related. The expert did *not* give an opinion on whether defendants did commit an assault in that way, and thus did *not* give an opinion on how the jury should decide the case.

The trial court understood precisely the distinction between (1) not permitting the expert to opine that the particular defendants committed a crime for a gang purpose, and (2) permitting the expert to express his opinion in response to hypothetical questions. The court sustained an objection to a question regarding whether a particular defendant had knowledge of the gang activities. In sustaining the objection, it explained to the jury that "the law doesn't allow the expert to come in and say exactly what somebody else's mind — what was in their mind. All of the evidence is presented to you for you to make that decision." It only permitted the expert to give an opinion whether an assault would have had a gang purpose in response to hypothetical questions. The court acted correctly in this regard.

The Court of Appeal, and perhaps the author of the separate opinion in this court, may be concerned that permitting these hypothetical questions invades the province of the jury.[5] However, as noted, expert testimony is permitted even if it

---

[5] Justice Werdegar's separate opinion seems to make one or more of the following arguments: (1) expert testimony is simply not admissible regarding whether a crime is gang related; (2) such testimony may not be given in the form of opinions based on hypothetical questions; (3) there was something improper

*(footnote continued on next page)*

embraces the ultimate issue to be decided. (Evid. Code, § 805.) The jury still plays a critical role in two respects. First, it must decide whether to credit the expert's opinion at all. Second, it must determine whether the facts stated in the hypothetical questions are the actual facts, and the significance of any difference

_____

*(footnote continued from previous page)*

about the specific hypothetical questions of this case; or (4) there was something improper about the specific *answers* of this case.

However: (1) It has long been settled that expert testimony regarding whether a crime was gang related is admissible. (*People v. Albillar*, *supra*, 51 Cal.4th at p. 63; *People v. Gardeley*, *supra*, 14 Cal.4th at p. 619.) And for good reason. Such matters are sufficiently beyond common experience that expert testimony would assist the jury. (*People v. Gonzalez*, *supra*, 38 Cal.4th at p. 945.) For example, "It is difficult to imagine a clearer need for expert explication than that presented by a subculture in which this type of mindless retaliation promotes 'respect.' " (*People v. Olguin*, *supra*, 31 Cal.App.4th at p. 1384; see *People v. Gonzalez*, *supra*, at pp. 945-946.) (2) It has also long been settled that expert testimony generally, and expert testimony regarding whether a crime is gang related specifically, may be given in response to hypothetical questions. (E.g., *People v. Gardeley*, *supra*, at pp. 618, 619; *People v. Garcia*, *supra*, 153 Cal.App.4th at pp. 1505, 1513-1514.) We are aware of nothing so distinctive about expert gang testimony that it should be an exception to the general rule permitting the use of hypothetical questions. (3) The Court of Appeal criticized the hypothetical questions of this case solely because they only thinly disguised the fact they were based on the evidence, a criticism clearly unwarranted. The separate opinion does not specify what else might have been wrong with the questions. Neither the Evidence Code nor any other authority requires that hypothetical questions be formulated in any particular fashion. The questions here were similar to questions found valid in cases such as *People v. Gardeley*, *supra*, at page 619, and *People v. Garcia*, *supra*, at pages 1513-1514. (4) The expert's answers here fully responded to the questions. Although answers to hypothetical questions, as to any questions, must respond to those questions, neither the Evidence Code nor any other authority requires any particular answers to questions or the use or avoidance of any particular words. The expert gave his opinion and explained it. We see nothing improper in doing so.

Whether to accept the expert's opinion and, if so, how to apply it to the actual case was for the jury to determine. But the trial court properly permitted the questions and answers.

between the actual facts and the facts stated in the questions. The trial court instructed the jury on both of these roles. It told the jury that "the meaning and the importance of any [expert] opinion are for you to decide," and that "you may disregard any opinion you find to be unbelievable, unreasonable, or unsupported by the evidence." It also instructed the jury specifically about hypothetical questions: "In examining an expert witness, the expert witness may be asked a hypothetical question. A hypothetical question asks a witness to assume that certain facts are true and then give an opinion based on those facts. *It's up to you to decide whether an assumed fact has, in fact, been proved.* If you conclude that an assumed fact is not true, consider the effect of the expert's reliance on that fact in evaluating the expert's opinion." (Italics added; see CALCRIM No. 332; see also *People v. Prince*, *supra*, 40 Cal.4th at p. 1227 [citing with approval the comparable CALJIC instructions on expert testimony in upholding the expert testimony in that case]; *People v. Boyette*, *supra*, 29 Cal.4th at p. 452 [citing with approval the comparable CALJIC instruction on hypothetical questions in upholding the hypothetical questions in that case].)

Often the evidence presented in a trial may support varying factual findings, and the differences in the possible factual findings might affect the expert's opinion. The parties may, if they wish, explore with the expert various factual scenarios the evidence suggests and how they might affect the expert's opinion. The prosecution may do so on direct examination (and, if otherwise appropriate, on redirect examination); the defendant may do so on cross- (or recross-) examination. Such questioning might assist the jury. Moreover, the defendant has the opportunity during argument to stress to the jury that an expert's testimony is one opinion concerning the motivations of actors in a hypothetical scenario; the expert has no personal knowledge concerning the particular defendant's state of mind. The jury must still find the facts after considering all of

15

the evidence, the court's instructions, and the parties' arguments. Hypothetical questions must not be prohibited solely because they track the evidence too closely, or because the questioner did not disguise the fact the questions were based on the evidence.

Over the years, commentators have sometimes criticized the use of hypothetical questions, but not in a way that supports the conclusion that the questioner must disguise the fact they are based on the evidence, or that would support banning such questions entirely. (E.g., The New Wigmore: A Treatise on Evidence, Expert Evidence (2004) The Bases for Expert Testimony, § 3.4, pp. 93-95; 1 McCormick on Evidence (6th ed. 2006) § 16, pp. 98-99; see generally 3 Witkin, Cal. Evidence, *supra*, § 194, pp. 259-260.) The criticisms generally are that hypothetical questions might be unduly partisan or posed in an argumentative or obfuscating manner, might be overlong, might misrepresent or omit important facts, might confuse the jury, and might improperly be used as a "closing argument midstream." (The New Wigmore, *supra*, § 3.4, p. 94.) Wigmore's solution was to allow but not require use of hypothetical questions. (*Id.* at p. 95.) McCormick suggested that one safeguard against abuse "is the cross-examiner's rights; on cross-examination the adversary may supply omitted facts and ask the expert if his opinion would be modified by them. A further safeguard is the judge's authority; if she deems the question unfair, the trial judge may require that the hypothesis be reframed to supply an adequate basis." (1 McCormick on Evidence, *supra*, § 14, p. 90, fns. omitted.)

Thus, there are dangers with hypothetical questions. Over objection, the trial court should be vigilant to ensure that they are used fairly. But it is not a legitimate objection that the questioner failed to disguise the fact the question was based on the evidence. As applied to this case, it was not a legitimate objection

16

that the prosecutor failed to disguise the fact he was asking about an assault based on the one that the evidence showed defendants committed.

Defendant Vang also cites cases involving statutes that prohibit an expert to testify on a certain point. The cases generally hold that a party may not circumvent the prohibition by using hypothetical questions. (*People v. Bordelon* (2008) 162 Cal.App.4th 1311, 1326-1328; *U.S. v. Boyd* (D.C. Cir. 1995) 55 F.3d 667, 670-672; *U.S. v. Thigpen* (11th Cir. 1993) 4 F.3d 1573, 1579-1580; *U.S. v. Dennison* (10th Cir. 1991) 937 F.2d 559, 564-565; *U.S. v. Manley* (11th Cir. 1990) 893 F.2d 1221, 1223-1225.) The cases are inapposite. If a statute prohibits an expert from expressing an opinion on a point, it may be correct not to allow the expert to express that opinion by using hypothetical questions. But no statute prohibits an expert from expressing an opinion regarding whether a crime was gang related. Indeed, is settled that an expert may express such an opinion. To the extent the expert may not express an opinion regarding the actual defendants, that is because the jury can determine what the defendants did as well as an expert, not because of a prohibition against the expert opining on the entire subject. Using hypothetical questions is just as appropriate on this point as on other matters about which an expert may testify.

Accordingly, we conclude the trial court did not err in permitting the hypothetical questions of this case. This conclusion makes it unnecessary to determine whether the Court of Appeal correctly found the perceived error harmless.

17

### III. CONCLUSION

Although the Court of Appeal erroneously found error, it also found the error harmless.  Accordingly, it reached the correct result.  For this reason, we affirm the judgment.

CHIN, J.

WE CONCUR:

CANTIL-SAKAUYE, C.J.
KENNARD, J.
BAXTER, J.
CORRIGAN, J.
LIU, J.

18

**CONCURRING OPINION BY WERDEGAR, J.**

Because I find no probability the jury would have returned a verdict more favorable to defendant had it heard the expert witness's explanation of gang culture and practices, as it did, but not his opinion that the crime was gang motivated, as it also did, I concur in the judgment. But I do not join the majority opinion because I find it neither correctly states nor persuasively responds to the true question before us.

The majority characterizes the Court of Appeal's holding to be that hypothetical questions must not too closely track the evidence. But both the appellate court and defendant accept that to be of any value, a hypothetical question must be based on the evidence. To say the Court of Appeal was transforming "the *requirement* that a hypothetical question be rooted in the evidence into a *prohibition*," as the majority does (maj. opn., *ante*, at p. 9), is untrue and also evades the real issue in this case.

The Court of Appeal concluded the expert's opinion was inadmissible not because it was based on assumed facts that only thinly disguised the prosecution's evidence, but because based on those facts the expert was allowed to express an opinion that effectively directed the jurors how to resolve the issue of defendant's motive: " '[T]his is a gang-motivated incident. It wasn't about friends fighting among one another.' " Although "[t]he culture and habits of criminal street gangs are appropriate subjects for expert testimony . . . ," the Court of Appeal observed,

1

"[e]xpert opinion on a *specific defendant's* subjective knowledge and intent is not." (Italics added.)

I can think of two theories for rejecting the Court of Appeal's conclusion. First, it might be reasoned the expert's opinion was admissible because, contrary to the Court of Appeal's belief, although based on a hypothetical tracking the prosecution's evidence, the expert's opinion did not direct the jury to conclude that the specific defendant's crime was gang motivated. Alternatively, it might be reasoned that even after the expert had instructed the jurors generally on gang culture and practices, the jurors' inexperience in such matters rendered them incapable of determining motive in the circumstances without first hearing the expert's opinion on the issue. The majority seems to adopt the first theory; in my view, the outcome of this case requires consideration of the second.

The majority appears to accept that an expert may not directly opine that a particular defendant's crime was gang motivated, because the trier of fact is as competent as the witness to weigh the evidence and draw a conclusion from it. (Maj. opn., *ante*, at pp. 11-12, citing *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 77, and *People v. Prince* (2007) 40 Cal.4th 1179, 1227.) Nor does the majority dispute that the jury in this case must have understood the expert to be stating his opinion that, under the prosecution's version of the facts as set forth in the hypothetical, the hypothetical defendant's crime was gang motivated. But the majority concludes the expert did not improperly invade the province of the jury and resolve any factual disputes because the jury would adopt the expert's opinion as its own only if it first found the prosecution's version of the facts to be true. (Maj. opn., *ante*, at pp. 12-13.)

Although superficially plausible, the majority's explanation evades the central point that the expert told the jurors what inference concerning defendant's motive to draw in the event it did find the prosecution's evidence to be true. If it

2

is accepted that expert opinion is not admissible if it consists of inferences and conclusions that can be drawn as easily by the trier of fact as by the witness (see, e.g., *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1598; *People v. Valdez* (1997) 58 Cal.App.4th 494, 506), the question is whether the jury without expert assistance was competent to infer defendant's motive from the evidence. We thus recognized in *People v. Prince*, *supra*, 40 Cal.4th at page 1227: "[A]n expert's opinion that a defendant is guilty is both unhelpful to the jury—which is equally equipped to reach that conclusion—and too helpful, in that the testimony may give the jury the impression that the issue has been decided and need not be the subject of deliberation." Similarly, in *Summers v. A. L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1183, the court explained: " '[T]he rationale for admitting opinion testimony is that it will assist the jury in reaching a conclusion called for by the case. "Where the jury is just as competent as the expert to consider and weigh the evidence and draw the necessary conclusions, then the need for expert testimony evaporates." [Citation.]' [Citations.] In other words, when an expert's opinion amounts to nothing more than an expression of his or her belief on how a case should be decided, it does not *aid* the jurors, it *supplants* them."

Expert opinion is of course admissible when related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact (Evid. Code, § 801), and testimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces an ultimate issue (*id.*, § 805). This court long ago addressed the point in *People v. Wilson* (1944) 25 Cal.2d 341, 349: "There is no hard and fast rule that the expert cannot be asked a question that coincides with the ultimate issue in the case. 'We think the true rule is that admissibility depends on the nature of the issue and the circumstances of the case, there being a large element of judicial discretion involved. . . .

3

Oftentimes an opinion may be received on a simple ultimate issue, even when it is the sole one, as for example where the issue is the value of an article, or the sanity of a person; because it cannot be further simplified and cannot be fully tried without hearing opinions from those in better position to form them than the jury can be placed in.' " Thus, whether expert opinion on motive is admissible turns on whether it will be helpful to the jurors without unnecessarily supplanting them. In *People v. Gardeley* (1996) 14 Cal.4th 605, 617, we observed that the culture and practices of criminal street gangs are matters outside the common experience of jurors, justifying expert testimony to explain how certain activity might be gang related. We did *not* in *Gardeley* hold that an expert in gangs and gang culture could also properly state his or her opinion that certain hypothetically stated activity *was in fact* gang motivated. We stated, rather, that based on the expert's opinion that the hypothetical described a " 'classic' example of gang-related activity" (*id.* at p. 619), "the jury could reasonably conclude" (*ibid.*) the attack was committed with the specific intent to promote or assist in gang criminal conduct, as required by Penal Code section 186.22, subdivision (b)(1). The inference, in short, was for *the jury* to draw, based on the expert's explanation of gang practices and culture.

While it is not inconceivable an expert opinion could in particular circumstances be needed to fully explain to the jury how a crime might be gang motivated, the majority does not consider the point in this case. Instead, it broadly holds an expert's opinion on motive is admissible when stated in response to a hypothetical question rooted in the prosecution's evidence. By failing to recognize that the admissibility of expert opinion is limited by the need for it, the

4

majority suggests that expert opinion on *any* issue is permissible when provided in response to a hypothetical question rooted in at least one party's evidence. I am unwilling to subscribe to that rule.

**WERDEGAR, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Vang

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 195 Cal.App.4th 309
**Rehearing Granted**

_____

**Opinion No.** S184212
**Date Filed:** October 31, 2011

_____

**Court:** Superior
**County:** San Diego
**Judge:** Michael D. Wellington

_____

**Counsel:**

John P. Dwyer, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Steve Oetting and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

John P. Dwyer
Law Offices of John P. Dwyer
601 Van Ness Avenue, Suite E-115
San Francisco, CA  94102
(415) 885-4451

Steve Oetting
Deputy Attorney General
110 West A Street, Suite 1100
San Diego, CA  92101
(619) 645-2206