Filed 3/2/16  P. v. Jones CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B258757 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA405854) |
| v. | |
| SHAWN JONES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rand S.Rubin, Judge.  Affirmed.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler and Lance E. Winters, Assistant Attorneys General, Michael R. Johnsen and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Shawn Jones appeals from the judgment entered upon his jury conviction of robbery, criminal threats, and possession of a firearm by a felon. Appellant contends the gang enhancement attached to the robbery count is not supported by evidence. We disagree and affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

On the morning of November 6, 2012, appellant and an unidentified accomplice robbed a recycling center near the intersection of Jefferson Boulevard and Budlong Avenue, within territory claimed by the Rollin 20's Blood gang. During the robbery, appellant, wearing a gorilla mask, held up a worker, Cesar Lopez, at gunpoint. Appellant told Lopez to "get down" and pulled him to the ground. Meanwhile, appellant's cohort told another worker to look down and took approximately $5,000 from the cash register and a backpack.

Appellant had been at the recycling center before, and Lopez recognized his voice and face when appellant took the mask off upon leaving the center. Lopez identified appellant as "Spook," a Rollin 20's gang member. Appellant had several tattoos related to the Rollin 20's and the Bloods, and Lopez had heard appellant refer to the Bloods before.

Two days after the robbery, police officers saw appellant in the company of three other Rollin 20's gang members at a laundromat in the Rollin 20's neighborhood. On seeing the officers, appellant ran into the laundromat holding his waistband, and a customer directed the officers to a trash can where appellant had dumped a loaded gun. Lopez later identified the gun as the one used in the robbery.

During a search of appellant's home on December 13, 2012, police officers found gang paraphernalia, including a hat with symbols of the Bloods and the Rollin 20's. The officers left behind several pages of the warrant, which referenced the gorilla mask but did not contain information about the location of the robbery or its victims. Nevertheless, appellant went to the recycling center and confronted Lopez with the pages referencing

2

the mask. Lopez was afraid of retaliation and denied knowing anything about the warrant.

Appellant was arrested for the robbery on December 14, 2012. He became belligerent while being transported to jail and yelled out that the victim would not show up.[1] Once at the jail, appellant refused to be fingerprinted, and several officers had to use force to get his prints. One of them, Officer Carr, knew appellant from prior contacts. Officer Carr's mother owned a beauty salon in the Rollin 20's neighborhood. Appellant yelled: "Carr, Carr, why you doing this to me? Why you letting them do this to me? . . . [¶] I can't believe you're going to jeopardize your mom like this. . . . [¶] I know where she is. I'm going to slice that bitch and burn her ass to the ground. . . . [¶] She's going to die. She's going to pay. This is on Bloods." Officer Carr was concerned about his mother's safety and was reluctant to testify against appellant.

Appellant was charged with robbery (Pen. Code, § 211,[2] count 1), criminal threats (§ 422, subd. (a), count 2), and felon in possession of a firearm (§ 29800, subd. (a)(1), count 3). Gang enhancement allegations were attached to counts 1 and 2 (§ 186.22, subd. (b)(1)(C)), and a firearm use allegation was attached to count 1 (§ 12022.53, subd. (b)). Also alleged were several priors. The jury convicted appellant as charged and found true allegations of four prior felony convictions for which appellant served prison terms. One of the priors was a strike conviction. Appellant was sentenced to a total of 42 years four months in prison.[3]

This appeal followed.

---

[1] In a recorded phone call he made from jail a week before trial, appellant instructed someone to tell Lopez to disappear.

[2] Statutory references are to the Penal Code.

[3] On the record, the court incorrectly added up the individual sentence terms to 42 years eight months. The error was corrected in the minute order and abstract of judgment.

## DISCUSSION

Appellant's sole challenge is to the sufficiency of the evidence supporting the gang enhancement on the robbery count. He argues the evidence does not support the expert's opinion that he committed the robbery for the benefit of the Rollin 20's gang.

We review the record in the light most favorable to the judgment. (*People v. Leon* (2008) 161 Cal.App.4th 149, 157, 161.) The culture and habits of a criminal street gang are proper subjects of expert testimony, and a gang expert's opinion that a crime was committed for the benefit of a gang, based on a hypothetical question tracking the facts of the case, can be sufficient to support the section 186.22, subdivision (b)(1), gang enhancement. (*People v. Vang* (2011) 52 Cal.4th 1038, 1044, 1048.)

At trial, the prosecution gang expert was presented with a hypothetical based on the facts of this case. The expert opined that the robbery was for the benefit of the Rollin 20's gang for the following reasons: when a Rollin 20's gang member steals money in the gang's territory, at least some of the money must go to the gang; not sharing the proceeds of the crime with the gang would be disrespectful and would subject the gang member to discipline; and robbing a business in the gang's territory in broad daylight demonstrates that gang members can do whatever they want in that neighborhood. The expert agreed that only an active member of a Blood gang would attribute the crimes he commits to the Bloods.

Appellant relies on cases that have rejected a gang expert's opinion that a crime was committed for the benefit of a gang, rather than for the defendant's personal benefit, because of insufficient evidence in the record to support that opinion. (See *People v. Ochoa* (2009) 179 Cal.App.4th 650 (carjacking), *People v. Ramon* (2009) 175 Cal.App.4th 843 (receiving stolen vehicle).) Comparing this case to cases of insufficient evidence is not helpful because every case depends on its own facts. (See *People v. Rundle* (2008) 43 Cal.4th 76, 137–138 ["Reviewing the sufficiency of evidence . . . necessarily calls for analysis of the unique facts and inferences present in each case, and therefore comparisons between cases are of little value"], disapproved on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421.)

4

In *People v. Ochoa*, *supra*, 179 Cal.App.4th 650, the crime was not committed in the gang's territory, the victim did not recognize the defendant as a gang member, and the prosecution's witnesses conceded that gang members can commit crimes without benefitting the gang. (*Id*. at p. 662.) In contrast, here the robbery was committed in Rollin 20's territory. Lopez recognized appellant as a Rollin 20's gang member and admittedly was reluctant to testify because he feared retaliation by gang members. The expert explained that the robbery of a business by a gang member in broad daylight in gang territory is evidence of the gang's perceived invincibility. The record supports the conclusion that appellant's crime benefitted the Rollin 20's' reputation in the neighborhood.

In addition, the expert testified that a Rollin 20's gang member in good standing must share with the gang any money he steals in gang territory. The expert's testimony validly informed the jury about a fact peculiar to gang culture, which supports a reasonable inference that appellant did not commit the crime solely for his own benefit. (*People v. Vang*, supra, 52 Cal.4th at p. 1044.) We are not persuaded by appellant's argument that the expert's testimony is of no evidentiary value unless the money is actually traced to the gang. There is no evidence suggesting appellant was a rogue gang member. To the contrary, Lopez testified he had heard appellant refer to the Bloods on prior occasions, and appellant threatened his jailer with retaliation by the Bloods at the time of his booking for the robbery, suggesting his continued gang allegiance. That appellant's accomplice was not identified at trial is of little significance since the gang enhancement under section 186.22, subdivision (b)(1) does not require association with other gang members during the commission of the underlying crime. (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1138–1139.)

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

                                    EPSTEIN, P. J.

We concur:


MANELLA, J.


COLLINS, J.

6