Filed 11/26/13  P. v. Cuevas CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LUIS GERALDO CUEVAS,<br><br>    Defendant and Appellant. | D062707<br><br><br><br>(Super. Ct. No. SCN283441) |


APPEAL from a judgment of the Superior Court of San Diego County, Aaron H. Katz, Judge.  Affirmed as modified.


Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Charles C. Ragland and Kimberley A. Donohue, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Luis Geraldo Cuevas guilty of committing multiple robberies. (Pen. Code, § 211; subsequent section references are to this code unless otherwise indicated.) Cuevas pleaded guilty to being a felon in possession of a firearm (former § 12021, subd. (a)(1)) and admitted three prior convictions for which he had served a prison sentence (§ 667.5, subd. (b)), one of which also qualified as both a serious felony (§§ 667, subd. (a)(1), 1192.7, subd. (c)) and a strike under the "Three Strikes" law. (§§ 667, subds. (b)-(i), 1170.12.) The court sentenced Cuevas to prison for an aggregate term of 28 years, four months.

Cuevas appeals, contending the court erred by admitting certain testimony of the People's expert witness and by staying instead of striking the one-year enhancement for the prison-sentence prior conviction that also qualified as a serious felony prior conviction. We modify the judgment to strike the one-year enhancement but otherwise affirm.

I.

BACKGROUND

A series of six bank robberies occurred over 10 months in North San Diego County. Some of the robberies were committed by a single robber, others by two. In all six robberies, the video surveillance system of the banks recorded the incident. The robber or robbers dressed in disguises, usually baggy clothes, sunglasses, and a hat; used a bag to collect the money; and handed the teller a handwritten note on lined notebook paper stating, "This is a robbery, give me all your fifties and hundreds," or something similar. Five of the six robberies occurred at bank branches located inside grocery stores.

2

Oscar Maldonado, an acquaintance of Cuevas, committed the sixth bank robbery at a stand-alone bank located in a shopping center. Prior to this robbery, Cuevas and his girlfriend bought Maldonado's disguise and ate lunch with him, and they were inside the bank seconds before the robbery. Maldonado wore a black sweatshirt, a black fedora-style hat, sunglasses and a pink bandana, and handed a handwritten note to the teller which read, "This is a robbery, give me all your hundreds and fifties." The teller gave Maldonado "bait money" containing a GPS tracking device.

Police followed the signal from the GPS tracking device and stopped a vehicle Maldonado was in. In the vehicle, police found a black fedora-style hat, a pink bandana, and a Target bag containing cash and the GPS tracker. Police subsequently searched Cuevas's apartment and found multiple disguises, including a blue shirt that was worn in one of the robberies.

The only issue contested at trial was the identity of the robber(s). Three different eyewitnesses identified Cuevas as the bank robber. In an effort to discredit the eyewitness identifications, Cuevas established that he had tattoos at the time of the robberies and that none of the eyewitnesses remembered seeing tattoos on the robber. In response, the People's expert witness, James Pringle, an FBI agent of 17 years and the North San Diego County primary FBI bank robbery investigator for 12 years, testified about the use of disguises during robberies. One type of disguise he discussed was the concealment of tattoos during a robbery.

The following testimony of Pringle is at issue on appeal (:

3

"[Prosecutor]        All right.  Now, we've heard a lot of testimony about tattoos in this case.  As an investigator, has it been your experience that robbers will conceal their tattoos?

"[Pringle]          Yes.

"[Prosecutor]        And, I guess, how many bank robberies would you say you've investigated over the course of your career?

"[Pringle]          Several hundred.

"[Prosecutor]        And based on your experience, is it unusual for witnesses to not notice tattoos?

"[Cuevas's counsel]  Objection.  Calls for a conclusion.

"[The court]         Hold on.

"[Prosecutor]        Based on his training and experience.

"[The court]         Sustained.

"[Prosecutor]        As an investigator of bank robberies, does it cause you any concern if a victim or witness didn't identify a particular tattoo?

"[Cuevas's counsel]  Objection, Your Honor.  Calls for a conclusion and irrelevant.

"[The court]         Sustained as phrased.

"[Prosecutor]        Agent Pringle, when you're getting witness descriptions, when you're interviewing people for a robbery, are one of the things you ask for are identifying marks?

"[Pringle]          Yes.

"[Prosecutor]        Based on your training and experience, if a witness does not describe a particular mark on a suspect, . . . what does that mean to you in terms of your investigation?  How much weight do you put on that?

"[Cuevas's counsel]  I'm going to make an objection as being irrelevant.

4

"[The court]          Overruled.  I'll permit that.

"[Pringle]            Not much weight.

"[Prosecutor]         Why not?

"[Pringle]            I know that those types of physical marks, like scars and tattoos, are items that are easily concealed.  So I don't put a lot of weight into them.  Although on the flip side, if a teller tells me the person had a specific tattoo, then, yes, I'm going to be interested in that.  If they didn't see a tattoo, I'm not going to be so concerned about that.

"[Prosecutor]         And do you have specific case experience where bank robbers cover up their tattoos?

"[Pringle]            Yes.

"[Cuevas's counsel]   I'll make an objection as irrelevant, Your Honor.

"[The court]          Overruled.

"[Prosecutor]         What are some ways they do that?

"[Pringle]            Makeup, clothing, actually altering the tattoo to make it look like a different tattoo.

"[Prosecutor]         And have you had . . . real life examples of cases where that's occurred?

"[Pringle]            Yes.

"[Prosecutor]         Based on your training and experience, is it difficult to cover up a tattoo with just a little bit of makeup?

"[Pringle]            It is not difficult at all."

5

## II.

## DISCUSSION

Cuevas contends the trial court committed two reversible errors: (1) admission of Pringle's testimony that he gives little weight to an eyewitness's failure to notice a tattoo on a bank robber; and (2) imposing and staying, instead of striking, the one-year enhancement for the prison-sentence prior conviction that also qualified as a serious felony prior conviction. As we shall explain, we reject Cuevas's claim of evidentiary error but accept his claim of sentencing error.

A.    *Claim of Evidentiary Error*

Cuevas contends Pringle's testimony, that a witness's failure to observe a particular mark does not deserve much weight because bank robbers often conceal scars and tattoos as part of their disguise, was not beyond the common knowledge of the jury and invaded the exclusive province of the jury. The People counter that Cuevas forfeited this claim of error; but even if he preserved it, he loses on the merits because the challenged testimony assisted the jury, and any error in admitting it was harmless. We hold Cuevas properly preserved his claim of error, but the claim has no merit.

1.    *Forfeiture*

The People argue that Cuevas forfeited the argument he raises on appeal because he failed to object at trial on the grounds he raises on appeal, namely, that Pringle's testimony that he gives little weight to an eyewitness's failure to notice a bank robber's tattoo was improper expert testimony or that it usurped the jury's function. Cuevas counters that both arguments were preserved on appeal by the objections he made at trial,

6

because the objections fairly apprised the court of its duty to decide whether the challenged testimony was improper or usurped the jury's function. We agree with Cuevas.

To preserve a claim of erroneous admission of evidence for appeal, a party must make a timely and specific objection at trial. (Evid. Code, § 353, subd. (a); *People v. Pollock* (2004) 32 Cal.4th 1153, 1181.) Although no particular form of objection is required, the objection must fairly inform the trial court of the specific reason or reasons for the objection. (*People v. Zamudio* (2008) 43 Cal.4th 327, 354.) A party may object to the opinion testimony of an expert on the ground that the testimony is not sufficiently beyond common experience and would not assist the trier of fact. (Evid. Code, § 801, subd. (a).) Expert testimony that invades the province of the jury in weighing the evidence cannot assist the trier of fact (*People v. Torres* (1995) 33 Cal.App.4th 37, 47), and testimony that cannot assist the trier of fact is not relevant (Evid. Code, § 210; *People v. Vang* (2011) 52 Cal.4th 1038, 1046 (*Vang*)). Additionally, "[i]n a criminal case, the objection will be deemed preserved if, despite inadequate phrasing, the record shows that the court understood the issue presented." (*People v. Scott* (1978) 21 Cal.3d 284, 290.)

Here, Cuevas objected to Pringle's testimony on relevancy grounds. He argues on appeal that the testimony was both not beyond the common knowledge of the jury and usurped the role of the jury, and therefore was of no assistance to the jury. Because, as we have explained, evidence that does not assist the trier of fact is irrelevant, Cuevas objected on the proper grounds. Furthermore, the record shows the trial court understood the issue presented by Cuevas's objections. The court discussed at sidebar the concerns

7

over the expert testimony and decided to rule on objections contemporaneously, and the question was rephrased three times before the court was satisfied the testimony was admissible.  Thus, Cuevas's objections at trial preserved the argument he raises on appeal.

    2.    *Merits*

On the merits, Cuevas contends Pringle's testimony, that he gives little weight to an eyewitness's failure to see a tattoo on a suspect because in his experience bank robbers will often cover up their tattoos, was improper for two reasons:  (1) it was not beyond the common knowledge of the jury, and (2) it invaded the exclusive province of the jury to weigh the evidence.  The People respond that Pringle's investigation of several hundred bank robberies made his testimony "'beyond common experience,'" and that his testimony did not invade the province of the jury because it was limited to how much weight during an investigation he attributes to an eyewitness's failure to notice a tattoo on a robber.  We conclude there was no reversible error in admission of the challenged testimony.

We review a trial court's decision to admit or exclude expert testimony for abuse of discretion.  (*People v. Jones* (2013) 57 Cal.4th 899, 946; *People v. Lindberg* (2008) 45 Cal.4th 1, 45 (*Lindberg*).)  "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it."  (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)  "Although a trial court has a great deal of discretion when it comes to admitting expert testimony, 'this discretion is not absolute.'"  (*Summers v. A. L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1169.)  It is the exclusive province of the jury to weigh and resolve any conflicts that exist in the evidence.  (*People*

*v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) An "expert must not usurp the function of the jury." (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1099 (*Humphrey*).) Thus, an expert's opinion on how much weight a jury should give a certain fact is improper because it invades the exclusive province of the jury. (*Summers*, at p. 1183.) Further, "[w]here the jury is just as competent as the expert to consider and weigh the evidence and draw the necessary conclusions, then the need for expert testimony evaporates." (*Vang*, *supra*, 52 Cal.4th at p. 1054.) However, "'"[t]he jury need not be wholly ignorant of the subject matter of the [expert's] opinion in order to justify its admission[.]"'" (*People v. Farnam* (2002) 28 Cal.4th 107, 162-163.) "In determining the admissibility of expert testimony, 'the pertinent question is whether, even if jurors have some knowledge of the subject matter, expert opinion testimony would assist the jury.'" (*Lindberg*, at p. 45.)

The portion of Pringle's testimony challenged by Cuevas assisted the jury in determining the credibility of the eyewitness identifications. The substance of that testimony was that during an investigation, Pringle would not rule out an eyewitness identification if the witness failed to see a tattoo on the suspect, because bank robbers often conceal their tattoos. Pringle did not "usurp the function of the jury" (*Humphrey*, *supra*, 13 Cal.4th at p. 1099) by telling the jurors how much weight they should give the identifications of the eyewitnesses who failed to notice Cuevas's tattoos. Furthermore, although the subject matter of the challenged testimony might not have been completely outside the common knowledge of the jury, it was based on Pringle's extensive experience investigating bank robberies, experience most jurors do not have. Pringle's

9

testimony also responded to Cuevas's attempt to discredit the eyewitnesses' identifications (based on their failures to observe Cuevas's tattoos during the robberies) by providing a reason why a witness might not observe tattoos. The jury could then consider that reason in determining how much weight to give the eyewitness identifications. Thus, since Pringle's testimony was based on his specialized knowledge and experience and would assist the jury, the trial court properly admitted it. (Evid. Code, § 801; see *Lindberg*, *supra*, 45 Cal.4th at pp. 45-46.)

Even if we were to accept Cuevas's contention that Pringle's testimony implied how the jury should weigh the eyewitness identifications, any error in the admission of the challenged testimony was harmless. The erroneous admission of expert testimony warrants reversal of a judgment only if it is reasonably probable that a result more favorable to the appellant would have been reached absent the error. (Cal. Const., art. VI, § 13; Evid. Code, § 353, subd. (b); *People v. Pearson* (2013) 56 Cal.4th 393, 446; *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)[1] Generally, admission of improper expert testimony is harmless when there is other "strong" or "overwhelming" evidence of

---

[1] We reject Cuevas's conclusory assertion that any error must be reviewed under the more stringent federal "harmless beyond a reasonable doubt" standard (*Chapman v. California* (1967) 386 U.S. 18, 24) because the admission of Pringle's testimony rendered Cuevas's trial "fundamentally unfair" in violation of his federal constitutional due process rights. "[G]enerally, violations of state evidentiary rules do not rise to the level of federal constitutional error." (*People v. Benavides* (2005) 35 Cal.4th 69, 91.) Cuevas has not explained why this general rule should not apply to the routine claim of evidentiary error he asserts here. We thus apply the *Watson* standard. (See, e.g., *People v. DeHoyos* (2013) 57 Cal.4th 79, 118 (*DeHoyos*) [applying *Watson* standard to claim expert testimony was erroneously admitted over relevancy objection]; *People v. Prieto* (2003) 30 Cal.4th 226, 246, 247 [applying *Watson* standard to claim expert testimony was erroneously admitted over objections based on Evid. Code, §§ 352, 801].)

defendant's guilt (*DeHoyos*, *supra*, 57 Cal.4th at p. 119; *Pearson*, at p. 446; accord *People v. Coleman* (1989) 48 Cal.3d 112, 144) and the jury is properly instructed on how to use expert testimony (*People v. Davis* (2009) 46 Cal.4th 539, 605 (*Davis*)). That is the situation here.

The evidence introduced against Cuevas at trial was overwhelming. Video surveillance recorded all of the robberies. Gloves, masks, other disguises, and a blue shirt that was worn in one of the robberies were found in Cuevas's apartment. Cuevas was acquainted with Maldonado, a known bank robber; bought the disguise Maldonado used in one of the robberies; and participated in that robbery. The similarities between the robberies indicated they were committed by the same person. Finally, multiple eyewitnesses identified Cuevas as the culprit.

Furthermore, the trial court thoroughly instructed the jury concerning eyewitness identification and expert testimony. Using CALCRIM No. 315, the trial court listed several factors the jurors should consider in determining the truthfulness and accuracy of eyewitness testimony identifying the defendant. The court also specifically instructed the jury to consider whether "the witness [was] able to identify any unique marks or features." The court instructed the jury on expert witness testimony pursuant to CALCRIM No. 332. That instruction advised the jury it was "not required to accept" expert opinions "as true or correct. The meaning and importance of any opinion are for you to decide." Absent evidence to the contrary, we presume the jurors generally understood and faithfully followed these instructions. (See, e.g., *People v. Homick* (2012) 55 Cal.4th 816, 867; *People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

11

Accordingly, because the evidence against Cuevas was overwhelming and the court correctly instructed the jury on how to evaluate eyewitness identification testimony and expert opinion testimony, it is not reasonably probable the jury would not have found Cuevas guilty had the trial court excluded Pringle's testimony about how much weight he attributes to an eyewitness's failure to notice a bank robber's tattoo.  (See *DeHoyos*, *supra*, 57 Cal.4th at p. 119; *Davis*, *supra*, 46 Cal.4th at p. 605.)  Thus, error, if any, in admitting that testimony would not warrant reversal of the judgment.  (Cal. Const., art. VI, § 13; Evid. Code, § 353, subd. (b).)

B.      *Claim of Sentencing Error*

Cuevas contends the trial court erred by imposing and staying execution of the one-year enhancement prescribed by section 667.5, subdivision (b) for his prior conviction in case No. SCN185363, because that conviction also qualified as a prior serious felony conviction for which the court imposed a five-year enhancement under section 667, subdivision (a)(1).  The People concede this sentencing error.  We accept the concession.

"[W]hen multiple statutory enhancement provisions are available for the same prior offense, one of which is a section 667 enhancement, the greatest enhancement, but only that one, will apply."  (*People v. Jones* (1993) 5 Cal.4th 1142, 1150.)  The proper remedy is to strike rather than stay the lesser enhancement.  (*Id.* at p. 1153; *People v. Perez* (2011) 195 Cal.App.4th 801, 805.)  We therefore modify the judgment by striking the one-year enhancement.

12

DISPOSITION

The judgment is modified by striking the one-year enhancement under section 667.5, subdivision (b) for Cuevas's prior conviction in case No. SCN185363.  As so modified, the judgment is affirmed.  Upon issuance of the remittitur, the trial court shall prepare an amended abstract of judgment reflecting this modification and shall forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

_____

IRION, J.

WE CONCUR:


_____

MCCONNELL, P. J.


_____

BENKE, J.

13