Filed 5/19/16  P. v. Mascorro CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JERRY RAYMOND MASCORRO et al.,<br><br>    Defendants and Appellants. | B262793<br><br>(Los Angeles County<br>Super. Ct. No. BA425891) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Kathleen Kennedy, Judge.  Affirmed with modification.

Heather J. Manolakas, under appointment by the Court of Appeal, for Defendant and Appellant Jerry Raymond Mascorro.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant Edward Lopez Jr.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Rene Judkiewicz, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Defendants Jerry Mascorro (Mascorro) and Edward Lopez Jr. (Lopez Jr.) (collectively, defendants) appeal their convictions for two counts of second-degree robbery. Both defendants argue that the trial court erred in giving the standard instruction on flight; Lopez Jr. contends that the court should have instructed on the lesser-included offense of grand theft; Mascorro asserts that the court impermissibly barred the third codefendant's[1] expert on eyewitness testimony from answering any hypothetical questions. We conclude there was no prejudicial error. However, we direct that Lopez Jr.'s abstract of judgment be amended to correct a clerical error.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Facts

Joseph Villareal and Patrick D., a minor, are cousins.[2] One sunny afternoon in early June 2015, they decide to ride their bikes through Grant Rea Park in Montebello.

At one point, they walked their bikes. As they did, a man walked up to them, blocked their path, and pointed a black pistol at Joseph. This first robber told Joseph and Patrick to empty their pockets, and shoved Joseph to his knees. Two other men walked up. Either the second or third robber "ripped" Joseph's backpack off his back. The third robber punched Patrick in the ribs, and the second robber went through Patrick's pockets The robbers took Joseph's Samsung Galaxy cell phone, his iPod, his money, and his bike. They took Patrick's green iPhone and his bike.

The first and second robbers rode off on Joseph's and Patrick's bikes. The third robber shooed the cousins out of the park, pushing them from behind and telling them to "keep on walking if you don't want to die." The third robber got into a truck and drove away. Joseph remembered the license plate number.

---

[1]    The third codefendant is Edward Lopez Sr. (Lopez Sr.). He is Lopez Jr.'s father. He was tried with his son and Mascorro, and also convicted of two counts of robbery. His appeal is pending before us separately. (See B265350.)

[2]    Because Patrick D. is a minor, we refer to him by first name and, for consistency, to Joseph by first name as well. We mean no disrespect.

After the third robber left, Joseph borrowed a phone and called 911. On that call, Joseph described the first robber as tall, thin and bald; as being around 28 years old; and as having a tattoo of some kind of writing on his chin.

The next day, police interviewed Joseph and Patrick. Both described the first robber as being a bald, thin Hispanic man in his late 20's with tattoos on his arms as well as one covering his chin. Both described the second robber as an Hispanic man with a moustache wearing plaid shorts and a baseball cap with "LA" on the crown. Police showed Joseph several six-photo photospreads, one containing Mascorro's photo and another containing Lopez Jr.'s; Joseph identified Lopez Jr. as the second robber but did not identify Mascorro as being involved. Police also showed Patrick the photospreads; Patrick identified Mascorro as the first robber, but did not identify Lopez Jr. as being involved.

Later that day, police went to the apartment to which the third robber's truck was registered. As they approached, the police saw a green iPhone, later identified as Patrick's, "fly" out of the window of an upstairs apartment. Inside that apartment were Lopez Jr. and Lopez Sr., a black baseball cap with an "LA" logo on it, and a pair of plaid shorts. Police transported Patrick to the scene of the arrest, and he identified Lopez Jr. as the second robber.

The next day, police arrested Mascorro as he stowed a black pistol matching the general appearance of the one used in the robbery. Mascorro had Joseph's Samsung Galaxy iPhone in his pocket and Joseph's bike at his apartment. Police thereafter presented Joseph with a second six-photo photospread containing Mascorro's photo; Joseph identified him as the first robber.

## II. Procedural History

The People charged Mascorro and Lopez Jr. with (1) the second-degree robbery (Pen. Code, § 211)[3] of Patrick, and (2) the second-degree robbery (§ 211) of Joseph.[4] As

---

[3]   Unless otherwise indicated, all further statutory references are to the Penal Code.

to both crimes, the People further alleged that Mascorro personally used a firearm (§ 12022.53, subd. (b)), and that a principal was armed during the robberies (§ 12022, subd. (a)). The People additionally alleged Lopez Jr.'s three prior prison terms (§ 667.5, subd. (b)).

At the preliminary hearing on these charges, both Joseph and Patrick identified Mascorro as the first robber and Lopez Jr. as the second robber.

At trial, Joseph and Patrick again identified Mascorro as the first robber and Lopez Jr. as the second robber.

The jury convicted both defendants of the robberies and found true the firearm enhancements. On Mascorro, the trial court imposed a 13-year prison sentence, comprised of three years for the first robbery plus ten years for personal use of a handgun; the court imposed a concurrent 13-year sentence on the second robbery. On Lopez Jr., the court imposed a five-year prison sentence, comprised of five years on the first robbery and a concurrent five-year sentence on the second robbery; the court struck the firearm enhancement and prior prison term enhancements.

Defendants timely appealed.

## DISCUSSION

### I. Jury instructions

Defendants raise two instructional errors: (1) both defendants argue that the trial court erred in instructing the jury on flight because there was insufficient evidence that either of them fled; (2) Lopez Jr. contends that the trial court erred in denying his request to instruct the jury on the crime of grand theft as a lesser-included offense to robbery. We review instructional errors de novo. (*People v. Quiroz* (2013) 215 Cal.App.4th 65, 73.)

---

**4** The People also charged Mascorro with two counts of possessing stolen property (§ 496) and possessing a concealed firearm (§ 25400, subd. (a)(2)), and charged Lopez Jr. with possessing stolen property (§ 496). The People dismissed the stolen property counts against both defendants prior to trial, and the jury acquitted Mascorro of the concealed firearm count.

### A. *Instruction on flight*

A court may instruct the jury on the concept of flight "'where the evidence shows that [a] defendant departed the crime scene under circumstances suggesting that his movement was motivated by consciousness of guilt.'" (*People v. Cage* (2015) 62 Cal.4th 256, 285, quoting *People v. Bradford* (1997) 14 Cal.4th 1005, 1055; § 1127c.) Here, the trial court gave the standard flight instruction set forth in CALCRIM No. 372: "If the defendant[s] fled immediately after the crime was committed, that conduct may show that he was aware of his guilt. *If you conclude that the defendant[s] fled*, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant[s] fled cannot prove guilt by itself." (CALCRIM No. 372, italics added.)

Defendants argue that (1) the instruction impermissibly dilutes the People's burden of proof, and (2) the factual predicate for giving this instruction is lacking because their departure on the cousins' bikes was not a circumstance indicating consciousness of guilt.

Defendants' first argument has been rejected by our Supreme Court. (*People v. Carrasco* (2014) 59 Cal.4th 924, 968 ["the instruction does not . . . lessen the prosecutor's burden of proof"], quoting *People v. Avila* (2009) 46 Cal.4th 680, 710.) We need not reach the merits of defendants' second argument because the giving of the flight instruction, even if unwarranted, was harmless beyond a reasonable doubt because the instruction by its very terms only applies, as the italicized passage above indicates, "if [the jury] conclude[s] that the defendant[s] fled." "In the absence of any evidence of flight after accusation," our Supreme Court has noted, "the jury would have understood that the instruction was to that extent inapplicable. The superfluous reference to flight . . . caused defendant no prejudice." (*People v. Elliott* (2012) 53 Cal.4th 535, 584; *People v. Visciotti* (1992) 2 Cal.4th 1, 61 [finding erroneously giving a flight instruction harmless because "the instruction did not assume that flight was established, leaving that factual determination and its significance to the jury"].)

5

### B.    Instruction on grand theft

A trial court is required to instruct the jury on all lesser-included offenses to a charged crime "'if there is substantial evidence supporting a jury determination that the defendant was in fact guilty only of the lesser offense[s].'" (*People v. Rangel* (2016) 62 Cal.4th 1192, 1225, quoting *People v. Parson* (2008) 44 Cal.4th 332, 348-349.)  Grand theft is a lesser-included offense to robbery; what differentiates them is that robbery requires that the taking of property be effected by force or fear. (*People v. DePriest* (2007) 42 Cal.4th 1, 50-51.)

Lopez Jr. argues that there was substantial evidence that *he* was guilty only of grand theft because he only removed Patrick's backpack; it was *Mascorro* who was holding Joseph and Patrick at gunpoint.  Thus, Lopez Jr. reasons, he did not use any force or fear and could have been viably convicted of grand theft.  We disagree.  Mascorro undoubtedly used force or fear (e.g., *People v. Burney* (2009) 47 Cal.4th 203, 251 ["use of a gun" is a "threat of force" "constitut[ing] robbery"]), and Lopez Jr. was one of the trio of robbers who operated in a coordinated fashion to force the cousins' submission by having Mascorro hold them at gunpoint while the others searched their pockets and belongings and took anything of value.  Indeed, the jury was instructed on the concept of aiding and abetting as to the robberies.  On these facts, there was not substantial evidence to support an instruction on the crime of grand theft.

## II.    Expert Witness Testimony

An expert may testify on any subject "that is sufficiently beyond common experience that [the expert's] opinion assists the trier of fact."  (Evid. Code, § 801, subd. (a).)  An expert's opinion may "embrace[] the ultimate issue to be decided by the trier of fact."  (*Id.*, § 805.)  Parties may pose hypothetical questions to experts, but only if those questions are "rooted in the evidence of the case being tried."  (*People v. Vang* (2011) 52 Cal.4th 1038, 1045 (*Vang*).)  A "trial court has broad discretion to . . . exclude cumulative or confusing expert testimony."  (*People v. Stoll* (1989) 49 Cal.3d 1136, 1159 fn. 20, citing Evid. Code, § 352.)  We review a trial court's evidentiary rulings for an abuse of discretion (*People v. Williams* (2009) 170 Cal.App.4th 587, 618), and focus on

the propriety of its ruling rather than the rationale for it (*People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12).

In this case, the third codefendant (Lopez Sr.) called an eyewitness expert. This expert testified at length about how people perceive, remember, and recall events in their lives. He explained how perception is limited by a person's "attentional capacity," by his "cognitive load," by the duration of the event, by the trauma or stress he is under, and by human beings' "change blindness" (that is, the inability to perceive small changes in the environment). The expert also opined that human memory is "malleable," and that a person will fill in missing details and even alter the details he does remember when confronted with new, seemingly credible information. As a result of these phenomena, the expert testified, a person's recollection of an event can be purposely or inadvertently contaminated by the procedures used to document that event (such as the procedures used to collect eyewitness testimony) and by the tendency of the human mind to "unconscious[ly] transfer[]" memories and not monitor where details came from. Thus, the expert went on to state, eyewitness identifications can sometimes be inaccurate because "picking faces is tough," because eyewitnesses will sometimes choose the face most similar to the perpetrator's in a photospread, and because a stranger's face may become familiar due to seeing it in repeated photospreads. Fresher identifications are better, he stated, because they are less likely to be contaminated. The expert provided numerous everyday examples to illustrate these various concepts.

The third codefendant's lawyer asked the expert five hypothetical questions. All of the questions were directed at attacking Patrick's identification of Lopez Sr. as the third robber from the first photospread because in that photospread Lopez Sr.'s photograph was from when he was in his 30's, whereas at the time of the robbery Lopez Sr. was in his 50's. The second and fourth questions asked the expert to assume the existence of a fourth robber. The second and third questions asked the expert to assume the police had made a "mistake" using Lopez Sr.'s outdated photo as a 30-year-old man in a photospread. The first and fifth questions asked the expert whether a victim's description of the third robber right after the crime or at the preliminary hearing was

7

likely to be more reliable. The trial court sustained objections to each of them as "improper." The court further explained that the questions involving a fourth robber did not reflect "the state of the evidence"; that the questions "imput[ing] motives" to the police were improper; and that the expert could not "testify to the ultimate fact."

Mascorro argues that the trial court's rulings on these five questions (1) improperly effected a "blanket ban" on all questions pertinent to the "ultimate issue" of the accuracy of Patrick's identification, in violation of Evidence Code section 805, and (2) in any event prevented the expert from "bridging the gap" between the theoretical concepts he was discussing and their practical application. We disagree.

The trial court did not abuse its discretion in sustaining objections to these questions. Contrary to what Mascorro suggests, there was no "blanket ban." The court did not purport to issue an all-purpose ruling; instead, it sustained five objections. Indeed, the court later overruled an objection to a hypothetical question asked of this witness. The court's rulings were also within the court's discretion on the merits. There was no evidence suggesting the involvement of a fourth robber and no evidence regarding the motive of the police in presenting multiple photospreads with Lopez Sr.'s photo; thus, these questions were not "rooted in the evidence of the case being tried." (*Vang*, *supra*, 52 Cal.4th at p. 1046.) And the remaining two questions were nearly indistinguishable from one another and were duplicative of the expert's testimony that descriptions soon after an event are more reliable. Because these rulings are sound on these grounds, it does not matter whether the trial court's reference to opinions encompassing the ultimate fact as an alternative ground is correct. We also conclude that the hypothetical questions were not necessary to "bridge the gap" between theory and practice because the expert testified in plain English and gave numerous real-life examples to illustrate his points.

Any error in not allowing these five questions to be answered was also harmless as to Mascorro. All five questions were aimed at casting doubt on Patrick's identification of Lopez Sr.; they did not mention Mascorro at all. The expert also noted that people are generally pretty good at remembering key characteristics like race, length of their hair,

8

facial hair, and "unique piercings, scars, [and] tattoos," all of which "catch our attention." Here, Joseph and Patrick consistently referred to the first robber as bald and having a tattoo on his chin, both of which accurately describe Mascorro. More to the point, the evidence of Mascorro's involvement in the robberies was overwhelming: Even apart from the identifications, he had Joseph's Samsung Galaxy phone and Joseph's bike; and, two days after the robbery, police watched him stow a black pistol like the one used in the robbery.[5]

### III. Custody Credits and Sentencing

#### A. *Mascorro's custody credits*

The People note that there is a discrepancy between the number of days of good conduct custody credits the trial court said Mascorro would receive during sentencing (40 days) and the number of days reflected in the minute order and abstract of judgment (41 days). Although the trial court's oral pronouncement of sentence usually trumps (*People v. Jones* (2012) 54 Cal.4th 1, 89 (*Jones*)), it does not do so where, as here, the oral pronouncement rests on an arithmetic error (see *People v. Duran* (1998) 67 Cal.App.4th 267, 270 [appellate courts may correct errors in calculation]). Because Mascorro is entitled to a number of days of good conduct custody credits equal to 15 percent of his actual custody days (§§ 4019, 2900.5 & 2933.1), and because 15 percent of 279 (the number of actual custody days) is 41, we will not disturb the abstract of judgment's award of 41 days of custody credit.

#### B. *Lopez Jr.'s sentence*

The trial court pronounced that Lopez Jr.'s five-year sentence for the second robbery was to run concurrently with the five-year sentence for the first robbery, but the box on the abstract of judgment for "concurrent" sentences is unchecked. Lopez Jr. argues that the abstract should be corrected; the People agree, and so do we. Because the

---

[5]     Because we conclude that Mascorro's evidentiary and instructional challenges lack merit, we have no need to address his argument that his convictions are infected by cumulative error.

oral pronouncement controls, the abstract must be corrected. (*Jones*, *supra*, 54 Cal.4th at p. 89.)

## DISPOSITION

The abstract of judgment is ordered amended to reflect that Lopez Jr. was sentenced to five years each on two counts of second-degree robbery, to be served concurrently. The superior court is ordered to forward the amended abstract of judgment to the California Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
HOFFSTADT

We concur:

_____, P.J.
BOREN

_____, J.
ASHMANN-GERST

10