Filed 8/16/21  P. v. Samson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JESSICA SAMSON,<br><br>        Defendant and Appellant. | C089905<br><br>(Super. Ct. No. STK-CR-FDV-20180006857) |

Defendant Jessica Samson stabbed her intimate partner Freddie Edmon in the heart, killing him.  Charged with murder, she introduced evidence that she was a victim of intimate partner battering.  The jury found her not guilty of murder but guilty of

1

voluntary manslaughter, and the trial court sentenced her to the lower term of three years, plus an additional year for use of a deadly weapon.

Defendant now contends (1) the trial court abused its discretion in admitting a letter written to her by a relative that contained information concerning the legal elements of self-defense, (2) the trial court abused its discretion in excluding the testimony of her expert on intimate partner battering pertaining to whether defendant acted reasonably in using deadly force, and (3) cumulative prejudice from multiple errors requires reversal.

Finding no abuse of discretion or error, we will affirm the judgment.

BACKGROUND

Defendant and Edmon began dating as teenagers and were intimate partners for almost 18 years until Edmon died. They had three children together.

On June 2, 2018, defendant and Edmon returned home from a party and argued in the garage. Their daughter could hear arguing and things falling down. Defendant and Edmon entered the house, still arguing. As Edmon held defendant over a counter in the kitchen, she grabbed a knife and stabbed him twice, once in the heart and once in the right side of the chest. Edmon died at the hospital.

Defendant was interviewed by detectives a few hours after the stabbing. She said she and Edmon had a history of domestic violence, but the last incident had been eight or nine years earlier. The older they got, the less they fought. Earlier in 2018, however, they had a big argument that got physical. She added that there had been a few times when they had fights. She said: "I know when I get hit, I definitely hit back, and I don't stop." Edmon had been arrested two or three times for domestic violence during their relationship.

At the party and on the way home on the day Edmon died, defendant and Edmon argued about whether defendant would use Edmon's last name when they got married. When they arrived at their house, defendant went inside, but Edmon drove away. However, Edmon soon returned to the house. They continued arguing, and defendant

2

threw a grill at Edmon's car. She said, "Everything went bad after that." The argument became physical, with Edmon shoving defendant. Defendant said they were "tussling, not really fighting." She remembered falling on the floor and her hair getting pulled, but she did not remember getting hit. Defendant went into the house and, when Edmon grabbed defendant's hair, she threw a fryer with old used oil in it at Edmon, and it landed on the floor. Defendant tried to get Edmon off of her and get away, but she slipped and fell in the oil. When she got back up, they started fighting again. They continued to yell at each other and call each other names, but neither of them threatened the other. Defendant was hunched over on the kitchen counter when she grabbed a knife, turned around, and hit Edmon with it.

Defendant testified in her own defense. There were many incidents throughout their relationship in which Edmon became physically abusive. The police were called many times. Defendant attempted suicide because she wanted it all to stop. Defendant testified concerning specific incidents of Edmon's abuse. Edmon had a domestic violence conviction in 2009 and violated his probation by making criminal threats against defendant in 2011. However, as they got older, their relationship became less violent. When she killed Edmon, she feared for her life.

Additional background is set forth in the discussion as relevant to the contentions on appeal.

DISCUSSION

I

Defendant contends the trial court erred in admitting a letter written to her by a relative that contained information concerning the legal elements of self-defense. She claims the letter was irrelevant and should have been excluded under Evidence Code section 352 because she did not solicit the letter.

As a threshold matter, the Attorney General asserts defendant forfeited appellate consideration of the admissibility of the evidence because defendant failed to obtain a

3

ruling on the relevance objection and did not object to the evidence under Evidence Code section 352. We will consider the merits because the trial court ruled on the relevance of the letter, at least implicitly, and also ruled on the admissibility of the evidence under Evidence Code section 352.

Before trial, the prosecution moved to admit evidence of a letter written to defendant by her cousin Darryl Pontod after she was arrested. In it, Pontod offered what he referred to as "helpful insight" concerning a potential claim of self-defense. The letter also described intimate partner battering, and advised defendant to convince a psychologist of it, noting a victim would have to have been in fear of serious harm or death in the near future and in imminent danger. The prosecution sought to use the letter to impeach defendant's testimony and also the testimony of the expert on intimate partner battering.

Defendant opposed admission of the letter, arguing it was not relevant because she did not solicit the letter from her cousin. The prosecutor responded that the letter was relevant to defendant's credibility because it coached her on how to present a defense of self-defense or intimate partner battering. The trial court concluded the evidence would be relevant because it could have provided the basis for defendant to artificially construct an intimate partner battering defense. However, the trial court deferred its ruling until the evidentiary context was clearer.

Later, the trial court admitted the letter because it was relevant to whether it affected defendant's testimony concerning abuse by Edmon and because defendant testified she had read the letter. The trial court also stated that it did not see a prejudicial effect under Evidence Code section 352 and that the probative value outweighed the prejudicial effect. Defendant interjected a hearsay objection, which she does not pursue on appeal.

" ' "Relevant evidence" means evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the

4

action.' (Evid. Code, § 210.) 'We apply the deferential abuse of discretion standard when reviewing a trial court's ruling on a relevance objection. [Citations.]' " (*People v. Panah* (2005) 35 Cal.4th 395, 474.)

On appeal, defendant repeats her assertion that the evidence was not relevant because she did not solicit the letter. However, as the trial court noted, the letter was relevant to her credibility. Whether or not she solicited the letter went to the weight of the evidence, not its relevance.

Defendant further argues the letter was not relevant because defense counsel would inevitably have counseled her about the elements of intimate partner battering. Again, this argument goes only to the weight of the evidence, not its admissibility.

Finally, defendant asserts the trial court was wrong that the letter had no prejudicial effect because the letter allowed the prosecution "to craft a fictional narrative that something improper had transpired . . . ." But whether the narrative was fictional was for the jury to determine. Defendant did not claim self-defense or intimate partner battering when she was first arrested and interviewed. The letter was probative.

In addition, the trial court did not abuse its discretion in concluding the evidence was not prejudicial. "The prejudice that [Evidence Code] section 352 ' "is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence." [Citations]. "Rather, the statute uses the word in its etymological sense of 'prejudging' a person or cause on the basis of extraneous factors. [Citation.]" [Citation.]' [Citation.] In other words, evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose." (*Vorse v. Sarasy* (1997) 53

5

Cal.App.4th 998, 1009.)  In that legal sense, the evidence was not prejudicial, and the trial court did not abuse its discretion by admitting it.

At the end of her discussion on admissibility of the letter, defendant asserts admission of the letter also violated her constitutional rights.  However, the proper admission of evidence under state law generally does not violate a defendant's constitutional rights.  (*People v. Merriman* (2014) 60 Cal.4th 1, 67.)

## II

Defense counsel posed a hypothetical question to defendant's expert on intimate partner battering concerning whether use of deadly force was reasonable under the circumstances faced by defendant.  The prosecutor objected, and the trial court sustained the objection.  Defendant now contends the trial court abused its discretion by excluding the testimony concerning whether defendant acted reasonably in using deadly force.

Intimate partner battering evidence may be relevant in murder cases to establish self-defense (i.e., that the defendant actually and reasonably believed in the need to defend against imminent death or serious bodily injury) or to establish imperfect self-defense (i.e., that the defendant actually believed in the need to defend against imminent death or serious bodily injury, but the belief was objectively unreasonable).  (*People v. Erickson* (1997) 57 Cal.App.4th 1391, 1399 (*Erickson*).)  In both circumstances, intimate partner battering evidence may be relevant to establish a defendant's actual, subjective perception that defendant was in danger and had to kill to avoid that danger.  (*Ibid.*)

Dr. Linda Barnard testified for the defense as an expert on intimate partner battering.  In preparation for her testimony, Dr. Barnard assessed defendant.  She relied on police and other investigative reports, witness statements, and her own interview of defendant, among other things.  In her report, Dr. Barnard concluded defendant is a battered woman and that "[a]s a result of this history of intimate partner battering, [defendant] experienced a heightened sense of danger and believed it was necessary to defend herself during the events of June 2, 2018."

6

Before trial, the prosecution moved to limit Dr. Barnard's testimony. Specifically, the prosecution requested exclusion of testimony from Dr. Barnard that "[d]efendant experienced a heightened sense of danger and believed it was necessary to defend herself when she killed the victim." The trial court stated the expert could not testify concerning ultimate issues in the case but that, otherwise, expert opinion was admissible.

At trial, Dr. Barnard testified concerning intimate partner battering in general and specifically about the indications that defendant was a victim of intimate partner battering. Dr. Barnard testified defendant is a battered woman.

Defense counsel posed a hypothetical question based on the facts of this case: "Imagine, hypothetically, a woman that's in a relationship with someone for 17 years. And throughout that relationship, she is choked, slapped, hit, physically prevented from leaving, dragged by her hair, and threatened by her male partner. In this hypothetical, the woman is eight inches shorter than the man, weighs roughly a hundred thirty pounds less than her male partner, and she says that she can't count the number of times she was physically abused, but she can specifically describe at least eight incidents. And the most recent incident of abuse, physical abuse from her male partner, was within the past 12 months. That's the exposition of this hypothetical. [¶] Now if this woman were attacked by her partner as she attempted to flee her home, and during that episode her head was slammed against the ground, she was prevented from leaving, and she was dragged and jerked by her hair, causing her head to whip back and forth, in your professional opinion, would this hypothetical person feel a heightened sense of danger at that time?" Dr. Barnard answered: "I would certainly expect that they would, yes."

Defense counsel then added: "And in this same hypothetical situation, if this woman used a knife against her male partner, in your professional opinion, would that person be acting reasonably in using deadly force?" The prosecutor objected to the question, and the trial court sustained the objection.

Battered person's syndrome has been defined as a series of common characteristics that appear in a victim who is abused physically and psychologically over an extended period of time by a dominant figure in their lives. The overwhelming majority of courts considering the question have concluded that the relevance of expert testimony regarding battered person's syndrome depends upon its proponent establishing some evidentiary foundation that a party or witness to the case is a battered person, and that the party or witness behaved in such a manner that the jury would be aided by expert testimony providing an explanation for the behavior. (*People v. Brown* (2004) 33 Cal.4th 892, 909 (dis. opn. of Brown, J.).)

Evidence Code section 1107 makes evidence of intimate partner battering admissible in a criminal trial. That statute provides: "In a criminal action, expert testimony is admissible by either the prosecution or the defense regarding intimate partner battering and its effects, including the nature and effect of physical, emotional, or mental abuse on the beliefs, perceptions, or behavior of victims of domestic violence . . . ." (Evid. Code, § 1107, subd. (a).) However, "[a] trial court may exclude an expert's opinion testimony if that expert lacks an adequate basis in formulating it. [Citation.]" (*People v. Lucas* (2014) 60 Cal.4th 153, 227, disapproved on other grounds as stated in *People v. Romero & Self* (2015) 62 Cal.4th 1, 53, fn. 19.) We review the trial court's rulings concerning admission of expert testimony for abuse of discretion. (*People v. Lindberg* (2008) 45 Cal.4th 1, 45.)

Intimate partner battering is relevant to whether a defendant actually believed she needed to kill in self-defense and also to whether the belief was reasonable. (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1083-1086 (*Humphrey*).) As to reasonableness, the California Supreme Court explained that its holding in *Humphrey* did not change the standard from a reasonable person standard to a reasonable battered person standard; instead, expert testimony is relevant to the reasonableness because the battered person,

8

from experiences with the batterer, may be better able to predict whether force is reasonably necessary. (*Id*. at p. 1086.)

The trial court did not abuse its discretion in sustaining the prosecutor's objection because the question was inconsistent with the *Humphrey* formulation of how intimate partner battering is relevant to the reasonableness of the force used. The role of the expert is to educate the jury on how to determine whether defendant was able to predict the extent of violence Edmon might use, not to tell the jury whether the force defendant used was reasonable. As the California Supreme Court wrote: " '[T]he expert's testimony might also enable the jury to find that the battered [woman] . . . is particularly able to predict accurately the likely extent of violence in any attack on her. That conclusion could significantly affect the jury's evaluation of the reasonableness of defendant's fear for her life.' [Citation.]" (*Humphrey, supra,* 13 Cal.4th at p. 1086, italics omitted.)

On the issue of whether deadly force is reasonable, it is not the expert's specialized knowledge about intimate partner battering that is determinative; instead, it is the battered person's specialized knowledge about the batterer that is relevant to the reasonableness of the force used. In the hypothetical presented to Dr. Barnard, defense counsel asked her whether, knowing the facts of this case, the deadly force used was reasonable. But the only relevant opinion concerning reasonableness of force is the battered person's opinion if the battered person gained specialized experience to know how the batterer might act. (*Humphrey, supra,* 13 Cal.4th at p. 1086.) The expert in this case had no such experience upon which to predict the likely extent of the batterer's violence and thereby determine the reasonableness of the force defendant used.

An expert's testimony must be based on matter (including special knowledge, skill, experience, training, and education) perceived by, personally known to, or made known to the expert at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject

9

to which the testimony relates.  (Evid. Code, § 801, subd. (b).)  Because Dr. Barnard did not have the experience to know the extent of the danger posed by Edmon's actions when defendant killed Edmon, Dr. Barnard's opinion on whether defendant's use of force was reasonable was inadmissible under Evidence Code section 801.  Therefore, the trial court properly sustained the objection because Dr. Barnard lacked an adequate basis for forming an opinion about the reasonableness of the force defendant used.

In *Erickson, supra,* 57 Cal.App.4th 1391, the trial court excluded testimony by an expert on intimate partner battering concerning what the defendant actually believed when she killed her batterer.  The trial court ruled that the expert could opine on how the victim's experiences could lead to her perception, but could not opine on what the victim actually perceived.  (*Id*. at p. 1397.)  The Court of Appeal agreed that an expert on intimate partner battering cannot state what a victim believed when killing the batterer, relying on the prohibition in Penal Code section 29.  (*Erickson,* at pp. 1400-1402.)  Here we need not consider section 29 because the question posed by defense counsel in this case was beyond the specialized knowledge of the expert.

Defendant argues the expert testimony on reasonable force was admissible under Evidence Code section 805, which states:  "Testimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact."  But Dr. Barnard's opinion about whether defendant's use of force was reasonable was not "otherwise admissible" because the expert's opinion was not relevant under the formulation of reasonableness embraced by the California Supreme Court in *Humphrey*.  It was defendant's expertise, not the expert's, that was relevant on that ultimate issue of reasonableness.  Therefore, even though an expert may express an opinion on an ultimate issue, whether a victim of intimate partner battering acted reasonably is beyond the expertise of the expert and is not admissible.  (See Evid. Code, § 801.)

10

Defendant argues *People v. Vang* (2011) 52 Cal.4th 1038 supports her position that it is permissible to ask an expert on intimate partner battering whether a hypothetical person, based on facts reflecting defendant and her circumstances, acted reasonably in using deadly force. In *Vang*, the California Supreme Court held that a gang expert "could not testify directly whether [the defendants] committed the assault for gang purposes. But he properly could, and did, express an opinion, based on hypothetical questions that tracked the evidence, whether the assault, if the jury found it in fact occurred, would have been for a gang purpose." (*Id*. at p. 1048.) Relying on *Vang*, defendant acknowledges that Dr. Barnard had no personal knowledge whether defendant acted in self-defense because Dr. Barnard was not at the scene. But defendant argues that fact only prevented Dr. Barnard from testifying directly that defendant acted in self-defense. According to defendant, Dr. Barnard could properly express an opinion, based on a hypothetical question that tracked the evidence, whether an individual in defendant's position, if the jury found her description of events credible, would have acted in reasonable self-defense.

We disagree with defendant's application of *Vang* to the circumstances of this case. As we have noted, a jury is just as competent to make the objective reasonableness determination as the expert once the jury is informed by the expert about the effects of intimate partner battering. It was the province of the jury, then, to evaluate the reasonableness of defendant's actions, considering defendant's unique familiarity with her intimate partner and their history. (*Humphrey, supra,* 13 Cal.4th at p. 1086.) For these reasons, *Vang* does not support defendant's position here.

The trial court properly excluded Dr. Barnard's opinion concerning whether defendant acted reasonably in using deadly force.

### III

Having found no error, we also reject defendant's contention that cumulative prejudice from multiple errors requires reversal.

11

DISPOSITION

The judgment is affirmed.

                                        /S/
                                    MAURO, J.

We concur:

    /S/
RAYE, P. J.

    /S/
MURRAY, J.