Filed 9/11/25  P. v. Bertelli CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>NAZRA DANCE BERTELLI,<br><br>Defendant and Appellant. | C100597<br><br>(Super. Ct. No. 20FE018193) |

Defendant Nazra Dance Bertelli sexually abused his daughter L.D. from when she was four or five years old to ten or eleven years old.  Defendant was charged with 10 counts of lewd or lascivious acts by force or fear on a child under 14 years old:  Counts one through three alleged acts of touching L.D.'s "inner thigh," counts four through six alleged acts of touching her "vaginal area," counts seven through nine alleged acts of touching her breasts, and count 10 alleged defendant put his penis in L.D.'s mouth.  A jury found defendant guilty of all ten counts and the trial court sentenced him to the upper term on all convictions for a determinate term of 100 years.

1

Defendant appeals and argues the trial court made two reversible errors by (1) permitting an expert witness to testify to defendant's intent and (2) imposing upper term sentences on all convictions.  We affirm.

DISCUSSION[1]

I

*Defendant Has Not Established Reversible Error With Expert Testimony*

Defendant first argues we must reverse his convictions on counts one through three because the trial court erroneously permitted an expert, Sacramento County Sheriff's Sergeant Ruben Pena, to testify defendant's Internet "searches w[ere] evidence of his lewd intent towards [L.D.], testimony which invaded the province of the jury."  In this regard, defendant challenges five portions of Sergeant Pena's testimony about the searches.  The People contend this claim "should be rejected because it is forfeited, lacks merit, and/or for lack of prejudice."  We agree with the People that most of defendant's challenge to this testimony is forfeited, but we address one piece of testimony and find no error.

A

*Background*

At trial, Sergeant Pena testified that, during the investigation of defendant's case, he found images and Internet searches relevant to the case on defendant's electronic devices.  Five of these searches and images are relevant to this appeal.

First, an Internet search for " 'Gorgeous Brunette Teen Bucked by Boyfriend.' "  Sergeant Pena testified, "[S]earches specific to teens, younger models, is something that's going to, in my opinion, raise a flag for being evidentiary in nature.  It points to the

---

[1]     We forego a recitation of the specific facts of defendant's case because they are not relevant to the issues raised on appeal.

2

sexual proclivities and deviancies that the suspect in this case, and in most of my cases, have."

Second, a photograph of a child with their legs spread and an adult assisting them, which Sergeant Pena said: "Plays more into the fantasy, sexual proclivity type of why this would be on the phone, that's not [defendant]; that's not his child. It plays more into what I believe these sexual proclivities and deviancies are of the suspect."

Third, for an Internet search for " 'slut load daughter,' " Sergeant Pena stated: "[I]n cases where I have a biological father as a suspect in a case, where they're sexually abusing their biological daughter, that's going to be an immediate red flag. It shows me that they are looking for content to satisfy what their desires are in [an] incestuous relationship with their daughter." Defense counsel objected to this testimony based on "[c]onclusion," which the trial court overruled stating: "It's not a conclusion. It's an opinion based on education, training and experience relative to rationale for possession. You can cover it on cross."

Fourth, an Internet search for " 'free young daughter fucked hard porn video,' " to which Sergeant Pena testified: "So I have a victim in this case, that is [a] daughter to her biological father, who is the suspect, and a search like this is going to be a red flag, something I'm going to deem evidentiary."

Fifth, an "embedded website" called "[s]leepingbeautysex.com," which Sergeant Pena found relevant because the site showed sex with sleeping female models and L.D. described "a lot of these acts happening in the bed with her dad. Also [A.R., a half sister,] described an incident where she was asleep and she was touched and woke up and saw [defendant] walking away from her."

B

*Legal Standards*

A person with "special knowledge, skill, experience, training, or education" in a particular field may qualify as an expert witness and offer testimony in the form of an

3

opinion. (Evid. Code, §§ 720, 801.) Such expert opinion testimony is admissible only if the subject matter of the proposed testimony is "sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (§ 801, subd. (a).) " 'Where the jury is just as competent as the expert to consider and weigh the evidence and draw the necessary conclusions, then the need for expert testimony evaporates.' " (*People v. Torres* (1995) 33 Cal.App.4th 37, 47.) Along these lines, an expert witness " 'may not express an opinion on a defendant's guilt. [Citations.] The reason for this rule is not because guilt is the ultimate issue of fact for the jury, as opinion testimony often goes to the ultimate issue. [Citations.] "Rather, opinions on guilt or innocence are inadmissible because they are of no assistance to the trier of fact. To put it another way, the trier of fact is as competent as the witness to weigh the evidence and draw a conclusion on the issue of guilt." ' " (*People v. Vang* (2011) 52 Cal.4th 1038, 1048.) Similarly, expert testimony about a specific defendant's subjective intent and knowledge during the charged event is generally inadmissible. (See *People v. Killebrew* (2002) 103 Cal.App.4th 644, 657-658 [finding inappropriate an expert informing "the jury of his belief of the suspects' knowledge and intent on the night in question, issues properly reserved to the trier of fact"], disapproved on other grounds in *Vang*, at p. 1047 & fn. 3.) We review the trial court's ruling on the admissibility of expert testimony for an abuse of discretion. (*People v. Lindberg* (2008) 45 Cal.4th 1, 45.)

"[T]he failure to object to the admission of expert testimony or hearsay at trial forfeits an appellate claim that such evidence was improperly admitted." (*People v. Stevens* (2015) 62 Cal.4th 325, 333.)

C

*Trial Court Did Not Err In Permitting Sergeant Pena's Testimony*

Defendant asserts the above quoted portions of Sergeant Pena's testimony "make that vital connection for [the jury], *i.e.*, that [defendant]'s search history meant he touched [L.D.] with the proscribed 'incestuous' intent as part of his 'sexual proclivities

4

and deviances,' and was therefore guilty of the crimes charged in counts [one] through [three]. The trial court erred in permitting the expert opinion on [defendant]'s intent."

Defendant objected only to the testimony relating to the Internet search for " 'slut load daughter.' " The People contend even this objection was insufficient because it went to "conclusion," not "because it was impermissible opinion evidence that [defendant]'s [Internet] searches were evidence of his lewd intent toward [L.D.], thereby invading the province of the jury." We conclude defendant's objection sufficiently preserved the argument defendant now makes on appeal relating to a conclusion on defendant's intent when committing the acts against L.D.

This objection, however, does not extend to the other aspects of Sergeant Pena's testimony. At no point during this one objection did defense counsel indicate an objection to any other part of Sergeant Pena's testimony. Defendant asserts he objected to this testimony in a motion in limine; we disagree. The pretrial motion defendant relies on was to the searches, not to Sergeant Pena's testimony *about the* searches that defendant now contends were improper. And we do not find defendant's argument persuasive that any further objection was futile. The trial court provided no indication it was unwilling to consider any further objections, nor was there any other evidence the trial court was biased to the point defendant was absolved of the obligation to make further objections. (See *People v. Sturm* (2006) 37 Cal.4th 1218, 1233-1235, 1237 [finding any further objection futile where the trial court "belittled defense witnesses on several occasions," "disparaged defense counsel in front of the jury," and "chastised defense counsel for attempting to rephrase a question to which an objection had been sustained"].)

We therefore consider only the merits of defendant's argument to Sergeant Pena's testimony as to the Internet search for " 'slut load daughter.' " The central line of testimony at issue here is: "[I]n cases where I have a biological father as a suspect in a case, where they're sexually abusing their biological daughter, that's going to be an

immediate red flag. It shows me that they are looking for content to satisfy what their desires are in [an] incestuous relationship with their daughter." Sergeant Pena did not testify defendant had a sexual intent when touching L.D., he simply believed people making such a search held such generalized desires. Sergeant Pena also made this opinion in the form of a hypothetical. Expert witnesses are permitted to testify as to a hypothetical person's state of mind based on similar evidence adduced during trial. (See *People v. Vang*, *supra*, 52 Cal.4th at p. 1048 [finding expert "properly could, and did, express an opinion, based on hypothetical questions that tracked the evidence, whether the assault, if the jury found it in fact occurred, would have been for a gang purpose"].) Sergeant Pena stated his opinion of this Internet search as applying to "a biological father" and how it shows "what their desires are" with "their daughter." At no point did Sergeant Pena say this Internet search showed defendant specifically was looking to satisfy a sexual desire with his daughter when he touched her inner thigh. We therefore find no abuse of discretion in admitting this testimony.

II

*Defendant Has Not Established Reversible Sentencing Error*

Defendant also challenges the trial court imposing the upper term for his convictions on counts one through nine. Defendant makes two overall arguments of error here: (1) "There was insufficient evidence that [L.D.] was a 'particularly vulnerable victim' as compared to other victims of the same offense, here, a violation of section 288, subdivision (b)"; and (2) the trial court "abused its discretion in not imposing the presumptive midterm based on the factors in aggravation and mitigation." (Underscoring omitted.) We disagree.

A

*Additional Background*

On March 1, 2024, the trial court held a court trial on the aggravating factors and sentenced defendant. The prosecutor had alleged four aggravating factors: The crimes

involved threat of great bodily harm, the victim was particularly vulnerable, the crimes indicated planning and sophistication, and defendant took advantage of a position of trust. (Cal. Rules of Court, rule 4.421(a)(1), (3), (8), (11).) The parties agreed to rely on the evidence adduced at the merits trial for the aggravating factors findings. Based on this evidence, the trial court found two aggravating factors proven true beyond a reasonable doubt: (1) The victim was particularly vulnerable and (2) defendant took advantage of a position of trust. (Cal. Rules of Court, rule 4.421(a)(3), (11).)

For the victim being particularly vulnerable for counts one through nine, the trial court found several facts relevant. First, defendant sexually assaulted A.R., his daughter from a former partner, when she was 10 years old. A.R. had reported the assault to her mother, but her mother believed defendant's denials and so A.R. did not report her abuse until years later during L.D.'s case. Second, due to the custody arrangement between defendant and L.D.'s mother, defendant had sole control over L.D. for a week every other week. The abuse was particularly bad when defendant lived alone, which left L.D. "exposed to . . . defendant's assaults without adequate protection from any of the adults in her life during this time period." Defendant later lived with his parents and while there he "employed a number of techniques designed to torment [L.D.] into submission." This included physical assault that subsided with the grandparents' intervention but turned into subtler forms of physical and mental abuse. The grandmother also witnessed defendant's inappropriate behavior but chastised L.D. "for allowing herself to be used as though she were . . . defendant's girlfriend," implying the abuse was her fault and allowing the grandmother "to avoid an acrimonious confrontation with her son that might turn physical." In summary, the court stated: "[L.D.] was effectively abandoned to . . . defendant by her mother, who was fully aware he assaulted [L.D.'s] [half] sister, [A.R.], and in similar fashion, [L.D.'s] grandmother found it easier and less conflict-driven to blame her granddaughter for her son's inability to act like a father should act around his daughter, instead of nurturing and protecting her, the family set the stage for . . .

defendant's continuing torment of the victim. Until sensing she had no other way out, she then fully submitted and complied with his assaultive behaviors." Based on these facts, the court found, "[D]efendant's conduct was distinctively worse than ordinary commission of the underlying crime."

For taking advantage of a position of trust, the trial court found important "defendant occupying a position of trust with [L.D.] by virtue of the father/daughter relationship existing between the two. And contrary to the defense's unsupported contention that a position of trust is, by definition, inherent in every molest case. Stated simply, it is not. Molests are obviously committed by individuals both known and unknown to a child victim." Thus, the court concluded: "Stated simply, [L.D.] and . . . defendant's relationship as biological father and daughter suffices to place . . . defendant within a position of trust, under the meaning of [California Rules of Court, rule 4.421(a)(11)]. [¶] Further, at all times relevant . . . defendant's relationship with [L.D.] was the basis upon which he gained both access of and asserted control over the victim, whether in Rescue or in Orangevale. The evidence confirms that the [prosecution]'s argument that . . . defendant used his relationship with [L.D.] to gain access to her, free from interference by the family and relatives, and thereafter threatening, cajoling and punishing her until she complied with the sexual demands."

The trial court then sentenced defendant to the upper term on count ten. The court incorporated its ruling on the aggravating factors for justification of the upper term, further finding: "[A]n exercise of its discretion to impose either the low or middle terms would not be in the interest of justice, notwithstanding . . . defendant's request under [California Rules of Court, rule 4.423(b)(1) and (c)], relative to his professed minimal history of prior criminal conduct, his health issues and his alleged deprivation suffered by virtue of his pretrial incarceration. [¶] Stated simply, on balance, these asserted mitigating factors are substantially outweighed by the facts underlying the aggravating factors." The court then disputed the factual support for defendant's asserted mitigating

8

factors, noting defendant's past criminal convictions and disciplinary actions while in prison, stating defendant presented no evidence of a deprivation of adequate medical services and treatment while in custody, and defendant submitted no evidence he suffered 456 days of isolation.  The court then imposed the upper term on the remaining convictions, counts one through nine, "for those reasons set forth on the record . . . during the course of the court trial on the aggravating circumstance allegations found true under [California Rules of Court, rule 4.421(a)(3) and (11)] in association with each of the ten counts."  All terms were to run consecutively, making defendant's total sentence imposed a determinate term of 100 years.

## B

### *Legal Standards*

Section 1170, subdivision (b)(1) creates a presumption of the middle term for sentences with three possible terms.  Courts may override this presumption and impose the upper term "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).)  California Rules of Court, rule 4.421 provides a list of aggravating factors, including "[t]he victim was particularly vulnerable" and "[t]he defendant took advantage of a position of trust or confidence to commit the offense." (Cal. Rules of Court, rule 4.421(a)(3), (11).)  "Case law has explained that for purposes of finding the aggravating factor of particular vulnerability, ' "[p]articularly . . . means in a special or unusual degree, to an extent greater than in other cases.  Vulnerability means defenseless, unguarded, unprotected, accessible, assailable, one who is susceptible to the defendant's criminal act." ' " (*People v. DeHoyos* (2013) 57 Cal.4th 79, 154.)  Where age is an element of the offense, young victims can still be particularly vulnerable notwithstanding their age if other factors exist, such as "mental deficiency, physical

9

handicaps, intoxication, supervision or control of a defendant over a victim, and extreme youth within the given age range." (*People v. Garcia* (1985) 166 Cal.App.3d 1056, 1069-1070.)

Whether a victim is particularly vulnerable "is determined in the light of the 'total milieu in which the commission of the crime occurred.' " (*People v. Dancer* (1996) 45 Cal.App.4th 1677, 1694, disapproved on other grounds in *People v. Hammon* (1997) 15 Cal.4th 1117, 1123.) When "circumstances that placed the defendant in a position of trust and confidence were identical to the circumstances which placed the victim in a position of vulnerability," the two aggravating factors "are two sides of the same coin." (*People v. Garcia*, *supra*, 166 Cal.App.3d at p. 1070.) Trial courts should not use both aggravating factors in these circumstances. (*Ibid*.)

We review the trial court's discretionary sentencing decisions for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) The deference the abuse of discretion standard "calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712, fns. omitted.)

C

*Trial Court Did Not Err By Imposing The Upper Term*

The trial court found L.D. was particularly vulnerable because of defendant's unique level of oversight and control of L.D. under defendant's custody arrangement with L.D.'s mother and the lack of support for L.D. from other family members. Defendant labels his first overall challenge to these findings as one of insufficient evidence. But defendant is actually making a legal challenge, in that the factual findings are not legally sufficient to support the particularly vulnerable aggravating circumstance for three reasons. We disagree with each.

10

First, defendant contends, "[The] victim's minority per se is not a proper basis for finding particular victim vulnerability when minority is an element of the offense." We reject this argument because the trial court never relied on L.D.'s age to find her particularly vulnerable. L.D.'s age may have made it harder for her to resist the negative effects of defendant's supervision and control and the family's failure to intervene, but defendant's supervision and control of L.D. was not wholly dependent on L.D.'s age.

Second, and similarly as above, defendant argues the facts the trial court relied on for the vulnerability aggravating factor "were the 'force and duress' required to support the verdict" under section 288, subdivision (b). The trial court mentioned the physical abuse and duress defendant used against L.D., but this was distinct from the supervision and control over L.D. For example, the court said the abuse was particularly bad when defendant lived alone, which left L.D. "exposed to . . . defendant's assaults without adequate protection from any of the adults in her life during this time period." As with L.D.'s age, such supervision and control gave extraordinary access for defendant to use the force that violated section 288, subdivision (b), but this does not make the facts related to control the same as those related to force.

Third, defendant argues the trial court relied on the same facts for both the position of trust and vulnerability aggravating factors. This argument fails for the same reason as the two above. For the trust factor the trial court mainly relied on defendant's relationship as a biological father to L.D.: "Stated simply, [L.D.] and . . . defendant's relationship as biological father and daughter suffices to place . . . defendant within a position of trust." Defendant's parental relationship with L.D. was a reason L.D. was under defendant's uniquely vulnerable supervision and control, but the trial court did not rely on this relationship for both. Like age and force, the fact defendant was L.D.'s father is related to L.D.'s vulnerability, but these facts are not interdependent. A victim can be under strict supervision and control of the abuser and not be the child of the abuser, and vice versa. Thus, both aggravating factors were appropriate here.

11

Defendant's second overall challenge to the upper term sentences goes to the balancing of the factors. He argues that the trial court failed to consider mitigating factors and, because there was only one proper aggravating factor, it was an abuse of discretion to not impose the presumptive midterm. We disagree because the trial court did consider the mitigating factors saying: "Stated simply, on balance, these asserted mitigating factors are substantially outweighed by the facts underlying the aggravating factors." And as we concluded above, the trial court properly considered both aggravating factors. We therefore conclude the trial court did not abuse its discretion in imposing the upper term sentence on counts one through nine.

DISPOSITION

The judgment is affirmed.


/s/_____
ROBIE, J.


We concur:


/s/_____
EARL, P. J.


/s/_____
WISEMAN, J.*

---

\*      Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.